## Blessing's Assignees v. Johnson, et al.

(Decided May 13, 1915.)

### Appeal from Pike Circuit Court.

1.  Liens—Equitable Lien.—Where an intending purchaser of a tract of land, estimated to contain about 1,200 acres, borrows from another $12,000.00 to pay for the land under a written agreement, whereby he is to mortgage to the lender all the land purchased upon receiving a deed therefor, and is to manufacture the timber into ties and lumber and sell it to the lender at certain stipulated prices, and the money is furnished and the purchase made, but the deed which the purchaser receives from his grantor fails to convey all of the land purchased and the mortgage follows the description contained in the deed, and it subsequently develops that there is a deficit of 416.9 acres in the tract of land so conveyed and mortgaged, and the purchaser's assignees, to whom he has assigned for the benefit of his creditors, sue the purchaser's grantor and recover a judgment of over $4,000.00 for the deficiency, the lender has an equitable lien on the sum so recovered after the payment of attorneys' fees, costs and expenses incident to the recovery, which is superior to claims of general creditors.

2.  Mortgages—Amount of Indebtedness.—An intending purchaser of a tract of land borrowed $12,000.00 to pay for it under a written agreement by which he was to mortgage the land purchased and manufacture the timber thereon into ties and lumber and sell same to the lender at stipulated prices. On receiving a deed for the land the purchaser mortgaged it to the lender. The mortgage was conditioned not only for the payment of the debt, but for the performance of the timber contract. The purchaser, in consideration of certain stock therein, conveyed the land to a corporation which assumed the mortgage and the execution of the contract. Afterwards the purchaser made an assignment. Subsequently the corporation conveyed the land and all the personal property used in the manufacture of the lumber to the original lender and mortgagee, the conveyance providing that the mortgage was not to be affected. The mortgagee was to carry out the contract, pay certain labor claims, the expenses of manufacture, sell all the assets, pay himself the mortgage debt and turn over the balance to the corporation. Held, that the amount due under the mortgage was the balance due the mortgagee after the completion of the contract and not the difference between the face of the mortgage debt and the value of the assets at the time of the conveyance.

3.  Mortgages—Amount of Indebtedness Secured.—Where an intending purchaser of a tract of land borrows money to pay therefor under a written agreement to mortgage to the lender the land purchased and to manufacture the timber thereon and sell same to the mortgagee at certain stipulated prices, which sums

were to ·be credited on the mortgage debt, and under the con-
tract the expense of manufacture is to be borne by the mort-
gagor, the mortgagee had the right to deduct from the sum so
credited certain sums advanced to the mortgagor to meet his
pay roll, the difference being the indebtedness secured by the
mortgage; and where if this had been ·done the mortgage would
have covered the difference betwen the face of the debt and
the actual credits thereon, the fact that the books were kept so
as to credit the mortgagor with the entire amount of ties and
lumber furnished and charge him with sums advanced for pay
roll purposes does not change the character of the transaction.

4.   Mortgages.—In adjusting the accounts under the circumstances
above set out, it was not error to charge the mortgagor with cer-
tain lien notes on certain saw mills which the mortgagee dis-
charged, since the mortgagee had to use the mills to complete
the lumber contract, and it was cheaper to pay the lien notes
than to purchase new mills, and after the completion of the
contract the mills were sold and the entire proceeds credited to
the mortgagor.

· ROBERT L. MILLER for appellant.

AUXIER, HARMAN & FRANCIS and WILLIAMS, SCOTT &
LOVETT for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Affirming.

In October, 1909, John F. Blessing, a resident of
West Virginia, contemplated the purchase from L. H.
Salyer of a certain tract of land in Pike County for the
price of $12,000.00. Being without means to make the
purchase he solicited B. Johnson & Son, tie and lumber
dealers, of Richmond, Indiana, to advance the purchase
price. To this end B. Johnson & Son endorsed three
notes, each for $4,000.00, and payable in six, twelve and
eighteen months. The notes were paid. At the same
time, Blessing and Johnson & Son entered into a writ-
ten contract, dated October 18th, 1909, by the terms of
which Blessing was to make the purchase and Johnson
& Son were to furnish the $12,000.00. The contract
further provided that Blessing was to manufacture the
timber on the land into ties, which would be sold to
Johnson & Son at certain stipulated prices and the
amount thus paid for the ties credited on the money ad-
vanced by Johnson & Son. There was a further provis-
ion to the effect that Blessing was to execute to Johnson
& Son a mortgage on the land purchased as soon as he
received a deed therefor from Salyer conveying the land .

to Blessing with covenant of general warranty. The tract conveyed was estimated to contain 1,200 acres, more or less. On November 5th, 1909, Blessing mortgaged the land to Johnson & Son. The mortgage refers to the written contract between the parties and provided that it was to be null and void in the event Blessing paid the $12,000.00 and performed his part of the contract.

After the execution of the mortgage Blessing began the manufacture of ties and lumber from the timber on the land, which ties and lumber were shipped to Johnson & Son, as provided in the contract. On May 4th, 1910, Blessing conveyed the Salyer tract of land and certain other tracts acquired by him in the meantime to the Beaver Tie Company, a corporation which he had organized. The conveyance of the Salyer tract was made subject to the mortgage of Johnson & Son and the Beaver Tie Company assumed the payment of the mortgage. From that time on the Beaver Tie Company continued the manufacture of the timber into ties and the shipment thereof to Johnson & Son. At the time of the conveyance by Blessing to the Beaver Tie Company on May 4th, 1910, there was a balance due Johnson & Son of $10,-307.30. Johnson & Son not being pleased with the manner in which the timber operations were being conducted, began an investigation, which led to the discovery that the contract had been taken over by the Beaver Tie Company. Thereupon another contract was executed between Johnson & Son of the one part and the Beaver Tie Company and Blessing of the other part. This contract recited that the Beaver Tie Company had become indebted to various laborers and merchants in the sum of $3,207.15, which indebtedness it was unable to discharge. The tie company and Blessing, therefore, agreed to execute deeds of conveyance, vesting in B. Johnson & Son all of the real estate and personal property owned by the tie company, upon the following terms and conditions: Johnson & Son were to discharge the merchandise and labor claims. They were then to manufacture the timber into ties and lumber and sell the same, as well as the real estate and other property. With the proceeds they were first to pay the expenses incident to the manufacture and sale of the timber and the expenses connected with the sale of the real estate and other property. They were next to pay themselves the amounts advanced in the discharge of the merchandise and labor claims and all amounts due and owing them.

The balance, if any, they were to pay to the Beaver Tie Company. The contract further provided that it should in no wise affect or avoid the mortgage executed by Blessing to Johnson & Son until the debts thereby secured should be fully paid. When this contract was entered into Johnson & Son claimed that there was still due, under their contract with Blessing, the sum of $8,782.56. Pursuant to the above contract, the Beaver Tie Company and Blessing conveyed to Johnson & Son the lands covered by the contract, including the Salyer tract, together with all the property used in the manufacture of the timber. The deed also contained a provision to the effect that it should in no wise affect or void the mortgage above referred to.

Thereupon Johnson & Son assumed the timber operations. They paid the labor claims and the cost and expenses of the manufacture and sale of the ties and lumber and also sold the land and personal property. The proceeds were all credited on the account. According to their evidence, there remained due them on account of the $12,000.00 originally advanced the sum of $5,646.73.

On September 6th, 1910, Blessing, in Kanawha County, West Virginia, made an assignment to Higginbotham & Price for the benefit of his creditors. Higginbotham & Price qualified in Kanawha County by executing the proper bond.

Prior to Blessing's assignment he had ascertained that there was a deficiency of about 416.9 acres of land in the tract which he purchased from Salyer. He thereupon brought suit against Salyer to recover damages for the deficiency on basis of $10.00 per acre. After the assignment the action was prosecuted by Blessing's assignees. The suit resulted in a substantial recovery by the assignees. From the judgment so entered Salyer prosecuted an appeal and Blessing and his assignees prosecuted a cross-appeal. The judgment on the original appeal was affirmed, but reversed on the cross-appeal. Salyer v. Blessing, et al., 151 Ky., 459. The final judgment awarded pursuant to the mandate of this court provided for a recovery of a little over $4,000.00.

This action was instituted by Johnson & Son for the purpose of subjecting to the payment of the balance due under their contract the amount of the recovery in favor of Blessing and his assignees. On final hearing judgment was rendered in favor of Johnson & Son for the sum of $5,646.73. It was further adjudged that the

amount of the judgment obtained by Blessing and his assignees against Salyer less the attorneys' fees, expenses and costs incurred in obtaining the judgment be credited on the judgment rendered in favor of Johnson & Son. From that judgment this appeal is prosecuted.

The principal question presented is, whether or not Johnson & Son have a lien on the judgment which Blessing and his assignees recovered of Salyer. This is not an ordinary case of a mere loan and the execution of a mortgage on a particular tract of land to secure its payment. To determine the legal effect of the transaction we must take into consideration, not only the mortgage, but the contract, pursuant to which the mortgage was made. Blessing was without means to purchase the land. Johnson & Son agreed to furnish the money. To induce Johnson & Son to do this Blessing agreed to mortgage to Johnson & Son every acre of land which he purchased and to manufacture and sell the timber thereon to Johnson & Son at certain stipulated prices. Johnson & Son carried out their contract by furnishing the purchase money. This money was used to purchase the land. Salyer deeded the land to Blessing. Blessing executed a mortgage describing the land in the language of the deed. Had the deed covered the entire tract purchased it would have been included in the mortgage. Had Blessing refused to make the mortgage, specific performance would have been decreed. Instead of receiving from Salyer a deed for the whole number of acres purchased, Blessing received a deed for 416.9 acres less. Blessing's assignees were permitted to recover for the deficiency, because Salyer failed to convey the number of acres which he contracted to convey. Under the contract Johnson & Son were entitled to the stipulated security, whether in the form of land or damages for a deficiency in the quantity of the land. To hold that the damages for the deficiency passed to the assignees for the benefit of Blessing's creditors would, in effect, deprive Johnson & Son of a portion of the security which Blessing had obligated himself to give Johnson & Son and which contract clearly shows the parties thereto intended that Johnson & Son should have. If the case were one between Johnson & Son and Blessing alone, it is clear, we think, that Johnson & Son would have a lien on the judgment for the deficiency; and as an assignee for the benefit of creditors is not a bona fide purchaser for value of the assigned property, but stands in the

shoes of the assignor—2 R. C. L., 656-657; Lowry v. Dye, 110 S. W., 833, 17 L. R. A. (N. S.), 1032; Burnes v. Daviess County Bank & Trust Company, 135 Ky., 355, 122 S. W., 182, 135 A. S. R., 467, 25 L. R. A. (N. S.), 525—it is equally clear that the lien of Johnson & Son is superior to that of the general creditors.

The fact that Blessing's assignees were permitted to recover of Salyer in no way affects the question. Johnson & Son were not parties to that action and their rights were not concluded thereby, nor did Johnson & Son lose their right to the damages recovered merely because they did not intervene in the action and assert a claim thereto. When the chancellor adjudged that Blessing's assignees should have credit for the attorneys' fees, costs and expenses incident to the suit, substantial justice was done between the parties.

The next question concerns the amount of balance due Johnson & Son. It is insisted that when the deed was made by the Beaver Tie Company and Blessing to Johnson & Son the amount of the mortgage debt should be credited by the actual value of the assets embraced in the deed. It must be remembered, however, that the original contract between Blessing and Johnson & Son provided that Blessing should manufacture the timber and sell it to Johnson & Son at certain stipulated prices. The mortgage was conditioned, not only for the payment of the $12,000.00 advanced by Johnson & Son, but for the faithful performance of this contract. After the original contract and mortgage were executed Blessing, in consideration of 95 shares of the capital stock of said corporation, conveyed the land purchased from Salyer to the Beaver Tie Company, which assumed the performance of the contract and the payment of the mortgage. Johnson & Son did not consent to or acquiesce in this arrangement. Some time later Johnson & Son heard of the conveyance, and then it was that the Beaver Tie Company and Blessing, on the one part, and Johnson & Son, on the other, entered into a written contract by which all of the land and personal property used in the manufacture of the timber were to be conveyed to Johnson & Son with power to complete the manufacture of the timber, sell all of the property involved, pay whatever sums were owing them, and the balance to the Beaver Tie Company. Pursuant to this contract, the deed of conveyance was made. Both the contract and the deed provided that the mortgage was not to be

affected thereby. The purpose and effect of the transaction was to substitute Johnson & Son for Blessing and the tie company with full authority to carry out the original contract between Blessing and Johnson & Son, with reference to the manufacture of the timber into ties and lumber. Johnson & Son proceeded to and did carry out this arrangement in entire good faith. After completing the contract there was still left a balance of $5,646.73. As Blessing was obligated not only to give the mortgage on the land actually purchased, but to manufacture the timber into ties and lumber and to sell the latter at stipulated prices to Johnson & Son, and as the mortgage was conditioned not only for the payment of the $12,000.00 advanced, but for the performance of the timber contract, and as the tie company had assumed the performance of this contract and the payment of the mortgage and the title to the property was conveyed to the tie company prior to the assignment and the conveyance thereof has never been attacked, and as all the property was conveyed to Johnson & Son, not in satisfaction of the mortgage, but with the distinct understanding that the conveyance was in no wise to affect the mortgage, which was a valid and subsisting obligation prior to the time of the assignment, we conclude that the amount due under the mortgage is the balance due Johnson & Son after the completion of the contract and not the difference between the face of the mortgage debt and the value of the assets at the time of the conveyance from the tie company and Blessing to Johnson & Son.

It is insisted that certain sums advanced by Johnson & Son to Blessing to meet his pay-roll are not covered by the mortgage. This contention is more technical than substantial. For the purpose of keeping the account straight, Johnson & Son credited Blessing with all the ties and lumber received and charged him with the advancements for his pay-roll. It was the contract between the parties that Blessing was to bear the expense of manufacturing, and he was, therefore, entitled to credit on the amount of ties and lumber furnished only after this expense was paid. Johnson & Son, therefore, had the right to credit Blessing only with the difference between the value of the ties and lumber furnished and the cost of manufacture, which they themselves had borne. Had they done this, the mortgage would have covered the difference between the face of the debt and the actual credits thereon. The fact that the books were

kept so as to credit Blessing with the entire amount of ties and lumber furnished and charge him with the sums advanced for pay-roll purposes does not, in our opinion, change the character of the transaction.

Nor is there any merit in the contention that certain lien notes on certain saw mills which Johnson & Son discharged should not be charged to Blessing. Blessing contracted to manufacture the lumber. The contract was secured by the mortgage. The saw mills were purchased and were necessary for the performance of the contract. Johnson & Son, who were substituted for Blessing and the tie company, had to have saw mills to complete Blessing's contract. It was cheaper to pay the lien notes on the saw mills than to purchase new mills. When the work of manufacture was completed, the saw mills were sold and the entire proceeds credited to the tie company and Blessing. It follows that there was no prejudicial error in this method of adjusting the account.

Judgment affirmed.