CASE 42—PETITION EQUITY—FEBRUARY 21.

# Fall vs. McMurdy.

### APPEAL FROM FRANKLIN CIRCUIT COURT.

Though land be neither bought nor sold professedly by the acre, the presumption is, that in fixing the price, regard was had on both sides to the quantity which both supposed the estate to consist of. The demand of the vendor and the offer of the purchaser are supposed to be influenced in an equal degree by the quantity which both believed to be the subject of their bargain. Where it is evident that there has been a gross mistake as to quantity, and the complaining party has not been guilty of any fraud or culpable negligence, nor has otherwise impaired the equity resulting

from the mistake, he may be entitled to relief from the technical or legal effect of his contract, whether it be executed or only executory.

Where a misrepresentation is made by the vendor as to the quantity of land sold, though innocently, the right of the purchaser is to have what the vendor can give, with an abatement out of the purchase money for so much as the quantity falls short of the representation.

The rule which allows compensation for a deficiency in a tract of land sold and purchased for farming purposes, applies to a sale and purchase of a block of lots in a town, enclosed by fences and circumscribed by open streets. But the same rule for estimating the value of the deficit should not be applied where the improvements upon the lots, and their adaptation to the purposes to which they are devoted, formed the principal element of the value of the property—in such case the criterion of the abatement for the deficit is not in the proportion which the deficit bears to the number af acres contained in the boundary, but the difference in the value of the property, as it was at the time of the sale, and as it was represented to be, taking into consideration the location, size, and value of the block, with the improvements, the purposes for which it was bought and was used, &c.

In a sale and conveyance, in consideration of $9,000, of a block of lots in a town, enclosed by fences, and circumscribed by open streets; the vendor represented that there were *six* acres of ground, which representation was innocently made. The actual quantity was but a little over *four* acres. There were a dwelling house, school rooms, and other improvements upon the premises. *Held*—that the purchaser is entitled to an abatement of the purchase money to the extent and for the value of the deficit, to be determined by the difference in the value of the property as it was at the time of the sale, and as it was represented to be, taking into consideration the location, size, and value of the block, with the improvements, the purposes for which it was bought, and was used, &c.

T. N. & D. W. LINDSEY, for appellant, cited 5 *B. Mon.*, 540 ; 7 *Mon.*, 202 ; 15 *B. Mon.*, 518 ; 3 *Dana*, 480 ; *Ib.*, 283 ; 1 *B. Mon.*, 308 ; 4 *Dana*, 483 ; 2 *Dana*, 266 ; 6 *Mon.*, 594.

G. W. CRADDOCK, for appellee.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

Fall brought this action to subject to sale for payment of an installment of the purchase money, certain property which had been conveyed by him to McMurdy, situated in what was formerly called South Frankfort.

McMurdy, in his original and amended answer, resisted the relief sought, upon the grounds of mistake and fraud alleged to have been committed by his vendor in the sale of the property, for the injury resulting from which he prayed an abatement of the price, or a rescission of the contract.

In the amended answer he alleges, among other things, that whilst he was negotiating the purchase of the property, by cor-

respondence with the plaintiff, on the 14th April, 1857, he received from the plaintiff a letter describing the property as containing six acres, when in fact it does not contain more than — acres, as shown by a survey which the defendant had caused to be made subsequently to the filing of the original answer.

The letter is exhibited with the answer. It is dated April 14th, and contains the following description of the property which was the subject of the negotiation :

"The house is a square one, with four rooms and a libary below, and five, with store-room, above ; a very fine green-house is attached to one end, the library to the other. We have not admitted more than twenty boarders, but have received about twenty pupils from the town.

"The school rooms are detached from the house, and are sixty feet long by about twenty-six feet wide, one story high.

"*The lot contains six acres,* and is in a good state of repair. The vegetable and flower gardens are excellent, and very productive." The writer adds, "that the property has cost me nine thousand dollars, and I expect to get this for it, and it is very cheap at that price."

The plaintiff does not, in terms, admit, nor does he deny, having written this letter. But he says that "if he represented the property sold by him to defendant to contain more than it actually does contain he spoke and *wrote* from the statements of the Rev. Stuart Robinson, of whom he purchased, and from common report ; that he supposed the lots numbered as in the deed to contain four acres, and the alley and water street to the river, to contain two acres more, "and so explained the matter to the defendant," that he supposed he had bought six acres of ground, and, without surveying it, so stated ; but he denies it was done to deceive defendant, and says that he would have asked for the property what it had cost him, even had there been less ground than there is.

It appears, from the evidence, that some time after the receipt of the letter mentioned, the defendant wrote to J. H. Hanna, of Frankfort, requesting the latter "to select and purchase for him, either Dr. Lloyd's or Mr. Fall's property, *at the*

*price specified in said letter*, and exercising the discretion given me, I purchased Mr. Fall's at the price of $9,000." This is the statement of Hanna in his deposition. He states, furthermore, that the negotiation was carried on principally on the pavement in front of the house; that he may have walked through a portion of the property ; did not notice whether the whole or what portion of it was enclosed ; supposed he was purchasing what Fall owned, but there was nothing said about the quantity sold, and he did not know how much ground he was buying ; knew that the street and alley running parallel with the river were enclosed, but did not suppose they were included in the purchase; that he verbally closed the purchase in that interview, leaving it for McMurdy to consummate it by giving and receiving the necessary writings ; and that he wrote or stated to McMurdy that he had made the purchase, without giving any specific description of the property.

The record also shows that early in the month of August the family of the defendant took possession of the property, and about $2,700 of the purchase money paid, after which the defendant arrived, and, for the first time, saw the property, which was then shown to him by the plaintiff, and the contract closed by the execution of the proper writings.

The testimony of the surveyor and the plat and survey exhibited show that the quantity of land actually sold, and embraced by the conveyance from Fall to McMurdy, was but a little over *four* acres instead of *six* acres.

And the question to be determined is, whether the defendant is entitled to an abatement of the purchase money to the extent and for the value of such deficit ?

There is no difficulty in applying to the facts of this case the principles of law upon which the rights of the parties depend.

The rule deducible from the the highest judicial authorities, is thus stated in *Sugden's Law of Vendors*, (*page* 232 :) "If an estate be sold at so much per acre, and there is a deficiency in the number conveyed, the purchaser will be entitled to a compensation, although the estate was estimated at that number in an old survey.

"The rule is the same, though the land is neither bought nor sold professedly by the acre; the presumption is, that in fixing the price, regard was had, on both sides, to the quantity which both supposed the estate to consist of. The demand of the vendor, and the offer of the purchaser, are supposed to be influenced in an equal degree by the quantity which both believe to be the subject of their bargain. The general rule therefore is, that where a misrepresentation is made as to the quantity, though innocently, the right of the purchaser is to have what the vendor can give, with an abatement out of the purchase money for so much as the quantity falls short of the representation."

This doctrine, founded as it is on the plainest principles of reason and equity, has been uniformly acted on by this court. Thus, in the case of *Young vs. Craig*, 2 *Bibb*, 270, it is said that "there is no peculiarity in the principles upon which questions of this sort depend. In contracts of this kind the same good faith is required and the same responsibility attaches to its violation, which law and reason prescribe in every description of contract. If, through fraud, or gross and palpable mistake, more or less land be conveyed, than was *in the contemplation* of the seller to part with, or *the purchaser to receive*, the injured party would be entitled to relief in like manner, as he would for an injury produced by a similar cause, in a contract of any other species."

So in the case of *Smith vs. Smith*, 4 *Bibb*, 81, it was decided that it was not equitable to compel a specific execution of an agreement for a sale of a tract of 189 acres, when the parties made the contract under the erroneous belief that the boundary only included 165 acres, and fixed the price accordingly, the same learned judge concluding the opinion by remarking: "But it is evident that the obligation was given *under the influence of a mistake* as to the quantity contained in the boundary described in the obligation, and that in fact, John purchased and paid for no more than one hundred and sixty-five acres, at a stipulated price per acre; and although the obligation given by James to John might, upon its face, be co-extensive with the claim set up by the latter, yet we cannot doubt

the propriety of resorting to such extrinsic circumstances to repel the application to a court of equity to enforce the claim."

In *Harrison vs. Talbot*, 2 *Dana*, 265, this court, after an elaborate review of the previous cases on the subject, state the following as one of the general principles deducible from them: "When it is evident that there has been a gross mistake as to quantity, and the complaining party has not been guilty of any fraud or culpable negligence, nor has otherwise impaired the equity resulting from the mistake, he may be entitled to relief from the technical or legal effect of his contract, *whether it be executed, or only executory*"—the only difference being that in executory contracts of sale in gross it will not be so difficult to obtain relief from the literal effect of the written instrument, as, for obvious reasons, it must generally be after the title has passed.

Tested by these just and well established principles, the right of the vendee in this case, to be relieved from the technical or legal effect of his contract, although executed, would seem to be undeniable. We readily admit that the record does not authorize the imputation of a fraudulent motive on the part of the vendor, in the representation made by him of the quantity of land he was proposing to sell. But it is perfectly clear that there was a misrepresentation as to the quantity, innocently made, and the result, no doubt, of a mistake. It was, however, a gross and palpable mistake, under the influence of which the contract was negotiated and concluded. Through this mistake less land was conveyed than was in the contemplation of the seller to part with, or the purchaser to receive. The presumption must be, in the language of the authorities, that in fixing the price, regard was had, on both sides, to the quantity which both supposed the estate to consist of. The demand of the vendor, and the offer of the purchaser, must be presumed to have been influenced in an equal degree by the quantity which both believed to be the subject of their bargain. It is true, the appellant says "that he would have asked for the property what it had cost him, even had there been less ground than there is," but he does not intimate,

and it would be most unreasonable to assume, that the appellee was not influenced and controlled in a great degree, in accepting the terms proposed, by the representation as to quantity.

It is said, however, that the rule which allows compensation for a deficiency in a tract of land sold and purchased for farming purposes, should not be applied to the sale and purchase of a block of lots in a town, enclosed by fences, and circumscribed by open streets. But where is the foundation, in reason or common sense, for the discrimination contended for? Is the proposition intended to be gravely asserted, that a lot or a block of lots in a town, enclosed and bounded as stated, containing *five* acres, would be worth as much as an adjoining lot, with the same improvements, containing *ten* acres; or that the difference in the quantity would not at all control or influence the bid of a purchaser?

Of course the same rule for estimating the value of the deficit should not be applied. In the case before us, the improvements upon the lot, and their adaptation to the purposes to which they had been, and were to be devoted, formed the principal element of the value of the property. It is obvious, therefore, that the abatement in the price should not be in the proportion which the deficit bears to the number of acres contained in the boundary. The true criterion of abatement in such cases, would be the difference in the value of the property as it was at the time of the sale, and as it was represented to be—taking into consideration the location, size, and value of the lot, with the improvements, the purposes for which it was bought and was used, &c.

We cannot see that the right of the appellee to relief is at all affected by the agency of Hanna. The limited scope and purpose of his agency are apparent upon his own testimony, taken in connection with all the facts in the record. The appellee had received, in the letter written by the appellant, a minute, and as he supposed, an accurate description of the property, with a statement of the price and terms. He thereupon wrote to Hanna requesting him to purchase "either Dr. Lloyd's or Mr. Fall's property, *at the price specified in said letter.*" Now it is manifest, from this statement, corroborated by the

whole of his testimony, that his discretion and agency were restricted to the simple matter of making a selection between the two places named. Further than this he could not and did not go. The case therefore stands precisely as if the appellee had come in person, and upon the faith of the contents of the letters, so far as they related to the quantity of ground, had consummated the contract by accepting the conveyance, and by executing the notes for the purchase money. And it may be remarked, in this connection, that the appellant's representation as to the quantity of ground was repeated to the appellee, either before or about the time, as is to be presumed, of the consummation of the contract. This appears from that portion of the appellant's answer in which he states the grounds on which he supposed the lot contained six acres, and that he "so explained the matter to defendant." When this explanation was made is not stated, but it is fair to infer that it was made whilst the contract was the subject of negotiation and conversation between the parties.

But however this may be, we are satisfied that the offer of the appellee, and the authority given to his agent to buy one of the two places mentioned, were founded upon and superinduced by the contents of the letter from the appellant, and that the circuit court properly awarded relief on that ground, to the extent indicated in the judgment complained of.

Various other questions are presented in the pleadings, which it is not deemed necessary to notice.

The judgment is affirmed upon both the original and cross-appeal.