## Salyer v. Blessing; et al.

(Decided January 9, 1913.)

### Appeal from Pike Circuit Court.

1. Assignee—Right of Foreign to Sue in this State.—A non-resident assignee of a non-resident assignor, who qualifies in another state, may bring an action in this state to recover assets due his assignor without executing a bond, if the foreign assignment is one that would be valid if made in this state and is not prejudicial to the rights of any creditor residing in this state.

2. Vendor and Purchaser—Right of Vendee to Recover for Deficit in Quantity of Land.—Where land is sold in gross and not by the acre, if the vendor represents that the boundary contains a designated number of acres and the vendee relies on the representations, and it develops that there is a deficit of more than ten per cent in the quantity of land, the vendee may recover the value of the deficit.

3. Vendor and Purchaser—Criterion of Recovery for Deficit in Land.—In a suit by a vendee to recover for a deficit in the quantity of land sold, the criterion of recovery is the value of the deficit in the boundary, estimating the deficit at the price paid per acre for the boundary contracted for.

4. Vendor and Purchaser—Right of Vendor to Recover Interest.—In an action by a vendee to recover for a deficit in the quantity of land, he should have interest on the amount recovered from the date of the payment of the purchase money to the vendor.

J. S. CLINE, CHILDERS & CHILDERS for appellant.

ROBERT L. MILLER for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming on the original and reversing on the cross-appeal.

On Oct. 20, 1909, the appellant, Salyer, sold and conveyed to John F. Blessing, in consideration of $11,022.90, a tract of land in Pike county. The deed recites that the boundary described is "estimated to contain about 1200 acres, be the same more or less." In 1910 Blessing brought this suit against Salyer to recover from him $3,600 of the purchase money paid for the land, upon the ground that there was a deficit involving this amount between the number of acres sold and the number conveyed by the deed, estimating the value of the land at $10 per acre. The petition as amended averred that the land was sold at $10 per acre, and that Salyer falsely and fraudulently represented that there was 1200 acres in the tract conveyed, and guaranteed that it contained 1000 acres, and that Blessing, in ignorance of the quantity of land in the boundary,

relied on the representations made by Salyer, and the purchase price of $10,000 was paid on the assumption that the tract described in the deed contained at least 1000 acres. The deed recites the consideration as being $11,022.90, but the excess over $10,000 represents other matters not concerned in this litigation. It was further averred that a survey of the land disclosed that it contained 578.1 acres, making a deficit of 421.9 acres in the guaranteed acreage, and judgment was sought for $4,219, with interest from Oct. 20, 1909.

In his answer Salyer denied that he represented or stated that the tract of land contained 1000 acres. He averred that he did not know the number of acres contained in the boundary sold, and that the sale was in gross, or of a boundary of land and not by the acre, and that he was induced by Blessing to agree that there might be inserted in the deed a recital that the boundary contained 1200 acres more or less. Other matters were set up in the answer and among them a counterclaim on which he sought to recover $2,611, but as the evidence conclusively shows that there was no merit in the counterclaim the failure of the lower court to allow anything on this account is not complained of by counsel in this court and need not be further noticed. Nor does it seem necessary to devote any attention to any of the issues made by the pleadings except in so far as they relate to the question concerning the number of acres in the tract.

The lower court in disposing of the case found that the evidence showed that Salyer represented and guaranteed that the boundary sold and intended to be conveyed by the deed, contained 1000 acres, when he knew that it did not. He also found from the evidence that there was a deficit of 303 acres in the boundary described in the deed, and gave judgment in favor of the plaintiff for $3,030, with interest from May 1, 1910, the date at which Blessing first demanded that the deficit be made good. In addition to this he found that 56 acres of the boundary sold by Salyer to Blessing were not embraced in or conveyed by the deed, and he directed in the judgment that Salyer should convey this 56 acres or else pay Blessing for it at the rate of ten dollars per acre.

From this judgment both parties appeal: Salyer insisting that the petition should be dismissed, while

counsel for Blessing contends that judgment should have gone for $3,560, with interest from Oct. 20, 1909, the date of the deed, if Salyer conveys the 56 acres mentioned in the judgment, and that he should have judgment for $4,219, with like interest, in the event Salyer does not convey the 56 acres.

Before taking up the merits of the case we will dispose of a question of practice raised by counsel for Salyer. It appears from the record that after the institution of the suit by Blessing, who was a resident of the state of West Virginia, he made an assignment in West Virginia for the benefit of his creditors to Higgenbotham and Price, and by order of court these assignees were substituted as plaintiffs in place of Blessing. After this Higgenbotham died and the case proceeded to judgment in the name of Price, the surviving assignee.

It is now argued by counsel for Salyer that the assignees were without authority to prosecute the action or have judgment in their favor because they were nonresident assignees and had not executed any bond in this state permitting them to prosecute the action. There is some question as to whether this point was raised in the lower court in such manner as to make it available here, as there was no demand that the assignees execute a bond. But we will assume that objection was made in the lower court in due form to the right of the assignees to prosecute the action, and dispose of the matter on the merits.

In the chapter in the Kentucky Statutes relating to voluntary assignments for the benefit of creditors, and which contains sections 74-96, we do not find any provision denying to a foreign assignee the right to institute or prosecute an action in this state, or any direction that a foreign assignee before instituting or prosecuting an action in this state shall execute a bond. The sections of the statute, supra, in so far as they relate to the qualification of assignees, refer to resident assignees only.

We also think the right of a foreign assignee to maintain an action in this state has been determined adversely to the views of counsel for appellant in Peach Orchard Coal Co. v. Woodward, 105 Ky., 790, and Zacher v. Fidelity Trust & Safety Vault Co., 109 Ky., 441. In these cases it was held that there was no provision of the statute which authorized or required a foreign

assignee to execute a bond to enable him to maintain an action in his own name under a deed of assignment in another state, if the assignment was such as would be held good and enforced if made in this state and it was in harmony with the policy of this state and not prejudicial to the rights of any creditor residing in this state.

It is not suggested by counsel for appellant that the West Virginia assignment was prejudicial to any creditor in this state or in conflict with the laws or public policy of this state, nor was any motion made to require the execution of a bond, and therefore the assignees of Blessing had the right to prosecute to judgment the action instituted by him.

Coming now to the merits of the case, the decided weight of the evidence shows that about a month before Salyer sold and conveyed the land to Blessing he had it surveyed and learned from the survey that there was only 697 acres in the boundary, and that he represented to Blessing, and others acting for Blessing in the negotiations, at the time the deed was made, that there was at least 1000 acres in the boundary. It is further shown that Blessing and the person acting for him in the transaction relied on the statements made by Salyer as to the number of acres in the boundary and did not have any survey made until after the deed had been accepted and the purchase price paid.

But notwithstanding the existence of these facts it is insisted in behalf of Salyer that no recovery should be had: (1) Because the deed did not contain any warranty of the number of acres in the tract and the sale was of a boundary of land and not by the acre. (2) Because, although there may have been less than 1000 acres, the land actually conveyed was worth more than the amount paid for the tract.

It is further argued that Blessing, although he knew the tract of land did not contain 1200 or 1000 acres of land mortgaged it to a third person, representing that it contained 1200 acres, and thereby practiced a fraud upon the third party. So far as this matter is concerned it is of little consequence in the settlement of the issues between Salyer and Blessing. In the first place the evidence does not support the charge that Blessing practiced a fraud on the party to whom he mortgaged the land, and if he had, it would not relieve Salyer from liability, as there was no privity of contract or arrange-

ment between the party to whom Blessing mortgaged the land and Salyer, nor is there any evidence showing that the mortgage executed by Blessing had any relation to the transaction had with Salyer.

As before stated, the deed recites that the tract of land conveyed contained 1200 acres more or less, but the evidence shows that although this recital was put in the deed, the sale was made upon the understanding and agreement between the parties that the tract contained at least 1000 acres. When a vendor in selling land represents to the vendee that the tract proposed to be sold contains a designated number of acres, and the vendee relies on these representations and makes his purchase on the assumption that they are true, he may, upon discovering that there is a deficit in the number of acres, bring an action to recover the amount due on account of the deficit, notwithstanding the sale was in gross or of a boundary of land, if the discrepancy is sufficient in quantity to justify a recovery.

In this state the rule is that where there is a sale in gross and not by the acre, if the discrepancy is more than ten percent a suit may be maintained to recover the amount due. Page v. Hogan, 150 Ky., 726. Here the deficit is more than thirty percent, and so, although the sale may have been of a boundary and not by the acre, the vendee is entitled to recover the difference between the number of acres actually conveyed and the number of acres paid for. This action is not based on any warranty in the deed but upon the representations and statements made by the vendor, relying on which the vendee made the purchase.

That such a suit may be maintained is well settled. In Biggs v. Lexington & Big Sandy R. R. Co., 79 Ky., 470, the court said: "The general principle of law authorizing an action for compensation for a material deficit in land sold under a mistake as to the quantity was long since well established, but the right of recovery greatly depends upon the nature of the purchase, the circumstances, knowledge, and conduct of the parties. This right of action is based upon the contract which the law implies as the result of justice and reason and growing out of the mutual mistake of innocent parties. * * * Neither of the deeds contains any warranty of quantity. The lands are described in them by metes and bounds, and 'supposed to contain in the whole 3700 acres, be it more or less.' * * * * * But this court

has too often held that the remedy for a deficit, where such deeds as these exist, is based on an implied assumpsit to refund the money paid by mistake that results from ignorance, accident or confidence.''

In Dye v. Holland, 4 Bush, 635, the court said: ''Although the sale of the land to the appellant was not by the acre, but in gross, the deficiency proved of 41 3-4 acres in the tract, which was supposed to contain 200 acres, was beyond the range of ordinary contingency, and such as would in proper time have entitled the appellant to relief, on the ground that he acted, in purchasing the land, under a palpable mistake as to its true quantity.'' To the same effect are: Nave v. Price, 108 Ky., 105; Crane v. Prather, 4 J. J. Mar., 75; Harrison v. Talbott, 2 Dana, 258; Boggs v. Bush, 137 Ky., 95.

Nor do we find available for appellant the argument of counsel that the land actually conveyed was worth more than the amount paid for the tract, assuming that it contained 1000 acres. If this suit had been brought to recover damages for false representations as to the value or quality of the land, or upon a breach of a convenant of warranty, then the criterion of recovery would have been the difference between the value of the property as it was represented or warranted to be and its actual or market value at the time of the sale; but this action was not brought on either of these grounds. The recovery is sought upon the ground that the vendor falsely and fraudulently represented that the tract of land contained a designated number of acres, when in fact it contained a great many acres less than was represented. This being true, the vendee failed to get what he purchased, and he received no consideration for the payment made for the deficit in the acreage.

If the whole tract was sold and purchased for $10,000 supposing it to contain 1000 acres, the average price per acre for the tract would be of course $10, and if the vendee only secured in the purchase 697 acres it is clear that he paid $3,030 for which he received no consideration.

There is no issue made between the parties as to the value of the land. The vendor represented that he was selling 1000 acres, and the vendee believed that he was buying 1000 acres, and upon this basis the trade was made. Accepting as true the representations of the vendor, the 1000 acres was only worth $10,000, as he will-

ingly sold it for that amount, and the vendee, assuming that the tract contained 1000 acres, paid for it that amount.

In this state of case the only deceit practiced on the vendee was in the representation as to the quantity of land, and this being so, it is clear that his right of recovery must be confined to the value of the deficit in the boundary, estimating the deficit at the price paid per acre for the boundary contracted for. Boggs v. Bush, 137 Ky., 95.

On the cross appeal of the appellee we think the court erred in not allowing interest on the recovery from Oct. 20, 1909, which was the date of the conveyance, as well as the date of the payment of the consideration. The conveyance shows that Salyer represented the tract of land to contain a greater number of acres than he knew it did. Induced by these representations, Blessing paid to Salyer more money than he should have paid, and this being so, Salyer should refund to him the money wrongfully obtained, with interest thereon from the date of the payment.

Wherefore, the judgment on the original appeal is affirmed, and on the cross appeal it is reversed to the extent indicated.