## Hartsfield v. Wray.

(Decided November 1, 1918.)

### Appeal from Ballard Circuit Court.

1. Money Received—Recovery—Money or property parted with, through a mistake of law may be recovered.

2. Vendor and Purchaser—Deficiency in Land Conveyed—Compromise—Recovery.—Where a plaintiff claimed compensation for a shortage of fourteen acres in a tract of land conveyed to him, and through a mistake of law it was agreed that the grantor was liable for only 90 per cent. of the shortage and the amount that he paid for the 90 per cent. was compromised, the compromise

settlement did not prevent the plaintiff from recovering that part of the purchase price represented by the remaining 10 per cent. of the shortage.

W. MIKE OLIVER for appellant.

HENRY F. TURNER for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

In 1913, the appellant, H. C. Hartsfield, bought from R. E. Merriwether a tract containing 347 acres of land adjoining the town of LaCenter, in Ballard county. The Illinois Central Railroad runs through the tract from east to west, and Humphrey creek flows through it from the southeast to the northwest, thus dividing the tract into four parts. Hartsfield sold the southwestern portion, containing about 124 acres and lying south of the railroad, to W. H. Johnson at $50.00 per acre; and on October 30th, 1913, he sold the northwestern tract, lying immediately across the railroad, to the appellee, M. B. Wray. Johnson paid a part of his purchase money, and gave his lien notes for the balance. The tract bought by Wray was triangular in shape and was sold to him as containing 51 acres, at $75.00 per acre, his purchase price aggregating $3,825.00.

Wray took possession of his land and cultivated it during the year 1914. Early in 1915 Wray and Johnson began negotiations for an exchange of Wray's tract for an equal number of acres of the Johnson tract, which contained a desirable building site on the public road leading from LaCenter to Hinkleville. This trade brought about a survey of both tracts, and it was then ascertained that Wray's tract contained only 37 acres, and a fraction, thus developing a shortage of between thirteen and fourteen acres, or about twenty-five per cent.

Having been notified of the shortage Hartsfield went to LaCenter to confer with Wray and Johnson concerning an adjustment of the matter. In this interview, and perhaps upon the first notification of the shortage, Hartsfield claimed that the law allowed him a shortage of ten per cent in the acreage, without having to make compensation therefor; and, that under this rule he could, at most, only be required to make compensation for eight acres—the difference between 37 acres and 45

acres—the latter number being treated as ninety per cent of 51 acres.

By reason of the fact that the early land surveys in Kentucky were not accurately made, and that persons who buy land know this, the rule has been deduced that where a sale of land is made in gross a recovery will not be allowed for a deficiency which is less than ten per cent of the acreage called for by the deed. Boggs v. Bush, 137 Ky. 95; Anthony v. Hudson, 131 Ky. 185, 133 Am. St. Rep. 231; Anderson v. Dawson, 133 Ky. 708; Page v. Hogan, 150 Ky. 726.

But this rule has no application where the sale is by the acre, as in this case; and, in no case, can the vendor's liability be scaled, as contemplated by Hartsfield's version of the rule. If the vendor is liable, he is liable for the entire shortage. And, that he is liable for the entire shortage where his vendee, in a sale of land by the acre, receives less than his deed·called for, is too well settled to be now discussed. Anthony v. Hudson, *supra.*

No agreement was reached at the end of the first day's discussion and the parties separated to meet at the LaCenter Hotel on the next day to continue the negotiations. At the conference on the second day Hartsfield, was accompanied by his partner, T. A. Miller.

The parties met pursuant to the agreement; and after much parley and many expressions of opinion as to what was the law governing excesses and deficiencies in the quantity of land conveyed, all persons present finally agreed that Hartsfield's contention was correct; and upon that basis a compromise agreement was effected and reduced to writing, reading as follows:

"LaCenter, Ky., January the 11th, 1915.

"For and in consideration of four hundred and fifty dollars credited on my notes and fifty dollars to be paid by H. C. Hartsfield for wire as soon as W. H. Johnson builds a fence between W. H. Johnson and R. L. Bradshaw and on R. R. right of way, W. H. Johnson and M. B. Wray agree and bind themselves that all differences as to amounts of acres and fences, ditches, and so on, is settled in full as far as  H. C. Hartsfield is concerned.

"This January the 11th, 1915.

"W. H. JOHNSON,

"W. B. WRAY,

"H. C. HARTSFIELD."

It is apparent from these negotiations that Johnson was to convey 45 acres of his land to Wray in exchange for Wray's conveying his 37 acres to Johnson, acre for acre. This arrangement gave Wray the 45 acres to which it was conceded he was entitled, and for the eight acres shortage in Wray's tract (the difference between 37 and 45 acres) which he traded to Johnson, the latter received a credit of $450.00 upon his purchase money notes to Hartsfield. But in negotiating with Hartsfield, Johnson valued his land at $80.00 an acre; and at this price Hartsfield would have had to pay Johnson $640.00 for the estimated eight acres shortage. But it is contended by Hartsfield and Miller that a compromise was finally reached by which Hartsfield paid Johnson $450.00 plus $50.00 additional to be paid for a wire fence, all of which is shown by the written agreement of January 11th, 1915,

Shortly thereafter Johnson, in talking with a lawyer, learned for the first time that Hartsfield's theory concerning the ten per cent shortage was not only erroneous, but had no application to this case; that the correct rule applicable to this case required the grantor to account for the entire shortage instead of only ninety per cent thereof; and that Wray should have been compensated for fourteen acres, being the difference between 51 acres and 37 acres, instead of for only eight acres, the difference between 45 acres and 37 acres. This theory, which is undoubtedly correct, left Wray uncompensated for six acres, for which he had paid Hartsfield $450.00.

Upon learning these facts Johnson upbraided Hartsfield, and demanded that he reimburse Wray to the extent above indicated, and, upon Hartsfield's failure to respond Wray brought this action, on March 20th, 1915, against Hartsfield and Johnson, praying that the two deeds of January 13th, 1915, by which Wray and Johnson had exchanged lands, be cancelled and set aside, and that he recover of Hartsfield the sum of $1,050.00, the purchase price of the shortage of 14 acres in the original deed from Hartsfield to Wray at $75.00 per acre. The petition alleges that Hartsfield, either through fraud or mistake, represented to plaintiff that the tract contained 51 acres, when in fact it contained only 37 acres.

Hartsfield answered, traversing the allegations of fraud and mistake, and relied upon the compromise ef-

fected on January 11th, 1915, above referred to, in bar of plaintiff's right to recover.

Upon a final hearing the court entered a judgment by which the compromise agreement of January 11th, 1915, the deed from Johnson to Wray for 45 acres, and the deed from Wray to Johnson for 37 acres in exchange, were cancelled; and it gave to Wray a judgment against Hartsfield for $1,012.50, with interest thereon from October 30, 1913.

Hartsfield appeals and assigns two errors for a reversal: (1) that Wray's petition did not state a cause of action because it failed to show that he had offered to restore the benefits received by him under the compromise settlement, either by re-conveying to Johnson the 45 acres of land, or by paying or offering to repay Hartsfield the $450.00 which passed from Hartsfield to him in the compromise settlement of January 11th, 1915; and, (2) because the proof failed to sustain the essential allegation, that false representations were made by Hartsfield, or by any one for him or on his behalf, whereby Wray was induced to enter into the compromise settlement; and that the court should have dismissed the petition for that reason alone.

The theory of Hartsfield is that although he did not directly pay to Wray what was due him by reason of the shortage, he did indirectly reimburse Wray through the arrangement by which Johnson conveyed to Wray the 45 acres to which it was agreed he was entitled; and, that Hartsfield having paid Johnson for making this conveyance to Wray, the latter's claim had been satisfied. The fact of payment, as alleged, is true. This argument, however, is based upon the theory that under the settlement a compromise was made in which each party thereto conceded something, and that these mutual concessions constituted a sufficient consideration for the agreement. But, it will be seen at a glance that the only concessions made were between Hartsfield and Johnson; that throughout these negotiations all parties proceeded upon the erroneous theory that Wray was entitled to receive compensation for only 45 acres of land, when in reality he was entitled to receive 51 acres, or be compensated for the shortage. In other words, the negotiations proceeded upon an entirely erroneous theory throughout, by which Wray certainly and finally lost six acres of land.

And, that this result was caused by the mutual mistake of all the parties in applying an erroneous rule of law to the facts before them, is clear.

Under the rule, well settled in Kentucky, that money or property parted with through a mistake of law may be recovered, Wray clearly had the right to recover this $450.00, unless his right to relief has been barred by the compromise of January 11th, 1915.

Turning then to the compromise agreement, it will be seen that by its terms it relates principally to the differences between Johnson and Hartsfield; it in no way purports to deal with any claim of Wray's except that of acreage. He was interested in nothing else, and was compensated for the full amount he erroneously thought was due him. Wray at first said he did not sign the agreement; that it in no way concerned him; but he later said that he must have signed it merely because the others asked him to do so. Wray is a farmer of ordinary education, and little used to transactions of this char-acter, while Hartsfield is an able business man and real estate agent. And, in view of the fact that all parties present took part in the negotiations and reduced an agreement to writing, the fair construction of the paper is, as heretofore stated, that Johnson was to supplement Wray's acreage up to 45 acres, and that Hartsfield was to pay Johnson $450.00 for doing so. In this way Wray received his 45 acres of land, and Johnson received pay-ment in full for the extra eight acres which he had con-veyed to Wray, though not at the full price of $80.00, which he had first asked. By this compromise Hartsfield and Johnson each conceded something on the price of the eight acres, thereby reaching a compromise. But their agreement did not affect Wray; he had nothing to do with the agreement between Hartsfield and Johnson, and conceded nothing.

So, when we come to consider Wray's position, we find that, by mistake of law upon the part of all con-cerned, they proceeded upon the theory that Wray was entitled to only 45 acres of land, when he was really en-titled to 51 acres of land, or to be compensated therefor. The compromise related solely to the question as to how much Hartsfield should pay Johnson for the eight acres he conveyed to Wray; and in that controversy Wray was not interested. To state it somewhat differently, the

compromise was between Hartsfield and Johnson, and related to how much Hartsfield should pay, and not to that for which he should pay. The latter was erroneously fixed, the former was compromised. It is plain, therefore, that Wray's claim was not affected by the compromise between Hartsfield and Johnson.

But, as the proof fails to show that Wray entered into the contract for the exchange of lands with Johnson through any fraud, mistake or misrepresentation upon the part of any one, there was nothing to justify the chancellor in setting aside those deeds. It is not claimed that Johnson was ever guilty of any bad faith; on the contrary the record shows that he is the friend of Wray and took an active part in his behalf. And, as heretofore stated, Hartsfield's part in the exchange of lands between Johnson and Wray consisted only in compensating Wray for his shortage. But when the shortage is fully made up Wray will have obtained all the relief to which he is entitled. So much of the judgment, therefore, as cancels the mutual conveyances of January 11, 1915, between Johnson and Wray, was erroneous. Those conveyances should be allowed to stand, and Wray should be given a judgment against Hartsfield for the purchase price of the remaining six acres shortage, at $75.00 per acre.

On the return of the case the circuit court will set aside the judgment appealed from, and in lieu thereof it will enter a judgment for Wray against Hartsfield for $450.00 with interest thereon from October 30, 1913.