### Beckley v. Gilmore.

(Decided November 11, 1921.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

Vendor and Purchaser—Deficiency in Quantity of Land—Contract of Sale.—While the quantity of land agreed to be sold constitutes a part of its description, yet the description is a part of the contract, and in actions to recover for an excess or a deficit in the quantity of land, the quantity should be stated in some writing fulfilling the requirements of the statute of frauds, or if the facts are sufficient, the contract should be reformed so as to include the quantity agreed to be conveyed, and unless the contract as executed states the quantity, or unless it can be reformed so as to do so, no recovery can be had on only oral proof or representations as to the quantity.

HENRY J. TILFORD and O'NEAL & O'NEAL for appellant.

ARTHUR M. RUTLIDGE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant, George W. Beckley, was the owner of a farm in Jefferson county, containing 255¾ acres. H. J. McClain & Company were real estate brokers and agents in Louisville, and another real estate agent, C. G. Purdom, had his office in the same room with them, but, according to the testimony, they were not partners, though when they represented the respective parties to any real estate transfer the commissions would be pooled and equally divided. The appellee, Thomas M. Gilmore, owned some city property in Louisville valued at $17,200.00, and desired to exchange it for a farm and not-

ified his agent, Purdom, to that effect. H. J. McClain, of the firm of McClain & Company, then approached appellant and on March 1, 1917, secured from him a written proposition to exchange his entire farm for the city property of appellee and $8,000.00 cash, which proposition says:

"I will take for my farm containing 255¾ acres with all improvements thereon, situated on the Shelbyville pike about sixteen miles from Louisville, Kentucky, in Jefferson county, Kentucky, as follows: The property 137 feet on Victor Court, with three frame houses thereon. Also 125 feet on Macmore Court with one frame dwelling and squab farm; lot running to Frankfort avenue, in what is known as Crescent Hill add. to Louisville, Jefferson county, Kentucky, and ($8,000.00) eight thousand dollars, payable in cash. All of the above described property must be free of all incumbrances, and a general warranty deed given by both parties. State and county taxes for the year 1917 to be assumed and paid on the property acquired. Both parties to pay regular agents' rate of commission. (Signed) G. W. Beckley."

On March 12, 1917, Gilmore, in a letter to his agent, Purdom, made a counter proposition, which reads:

"I will accept Mr. Beckley's proposition with the following exceptions: I will give ($5,000.00) in cash instead of the eight thousand dollars ($8,000.00) in cash, and let Mr. Beckley retain all the ground on the northwestern side of the creek from the main part of the farm. The line to run through the center of the creek. (Signed) T. M. Gilmore.

"This is the best I will do, and the offer is open to, but not beyond Thursday, 15, 1917. (Signed) T. M. Gilmore."

On March 13, 1917, Beckley made the following endorsement on the letter containing the above proposition:

"I will accept the above proposition and take ($5,500.00) cash instead of the ($5,000.00) payable in cash as above stated. (Signed) G. W. Beckley."

On March 15, 1917, Gilmore made the following endorsement on the letter and signed it:

"I will accept above proposition and pay $5,500.00 cash. (Signed) T. M. Gilmore. Witness C. G. Purdom."

On April 12, 1917, the property was conveyed by Beckley and wife to Gilmore, by deed which described the farm by metes and bounds, but contained no reference to the number of acres, nor were the courses and dis-

tances given in some of the calls so as to enable one to cal-
culate the acreage from the written description.

About a year later, Gilmore brought this suit against
Beckley to recover for a deficiency in the land which he
purchased.    The material allegations of the petition are
as follows:

"The plaintiff further says that at the time of the
purchase of said above described property and in all the
negotiations leading up to, and culminating in, said pur-
chase, the defendant represented and stated to this plain-
tiff that the above described tract of land contained two
hundred (200) acres, or two hundred (200) acres, more
or less, and that plaintiff purchased and was induced to
purchase said above described tract of land through de-
fendant's said statement and relying upon defendant's
representation and assurance that said tract did contain
two hundred (200) acres, or two hundred (200) acres,
more or less; that plaintiff at the time he made said pur-
chase did not know how many acres were contained in
said tract, and that but for the representations as to said
acreage so made to him by defendant, he would not have
purchased said property for the consideration paid to
defendant therefor.

"But plaintiff says that since the purchase of said land
from the defendant he has discovered that the defendant
was greatly mistaken in his statement and representa-
tion as to said acreage, and that said tract of land, at the
time of said sale, contained only 150 22-100 acres, the
same being 49 78-100 acres less than the number repre-
sented by defendant."

Gilmore says that McClain, Beckley's agent, stated to
him that the portion of the farm which Gilmore desired
to buy contained 200 hundred acres, more or less, and that
Beckley made the same statement to him on the day the
sale was closed.    McClain says that it was his *under-
standing* that the tract contained 200 acres, more or less,
and that he got his *impression* from Beckley.    He fur-
ther says that the deal was closed upon the idea that
there were 200 acres, more or less, within the boundary.
Purdom says at the time they called to see Beckley the
latter stated that the tract Gilmore bought contained
200 acres, more or less.    H. C. Hudson, who was present
at the time, says that they talked of the number of acres
in the whole farm, and then of the number that was
across the creek.    Mr. Beckley said that he had 255 acres
in his farm, and that he was under the impression—he

didn't know exactly—that there were from fifty to fifty-five acres across the creek, which would leave either 200 or 205 acres on the other side. On the other hand, Beckley says he never told Gilmore or McClain or any one else that there were 200 acres, more or less, in the tract which Gilmore bought, that he had never had that part surveyed or measured, that he merely traded the particular tract which Gilmore bought, and that, so far as the number of acres was concerned, he didn't know any more about it than Mr. Gilmore did. His son, Howell Beckley, testified that he was present at one time when Mr. Gilmore, Mr. McClain and Mr. Purdom were at the place, and Mr. Gilmore asked how many acres were in the place. They told him there were 255 acres. He then asked about this side of the creek and witness told him that they had never had it surveyed. Though he was not present at all the conversations which occurred between his father and Gilmore and others, he had never heard his father say there was any certain number of acres on the south-east side of the creek. On one occasion, however, Mr. Gilmore asked him how much he thought there was in that tract. He told Mr. Gilmore he did not know, but he would judge from 190 to 200 acres, that it had never been surveyed. Mr. McClain then said, ''Why, I believe fully that much.'' He himself had estimated that there were about 190 to 200 acres on the south-east side of the creek, but that Mr. Gilmore didn't buy it by the acreage, but bought a particular boundary.

The answer controverted the allegations of the petition and in a second paragraph set out all of the writings above inserted, and alleged that they constituted the entire contract between the parties and that the portion of the farm lying south-east of the creek which ran through it (the portion deeded to plaintiff) contained all the improvements, and that the sale was one in gross and not by the acre, and that plaintiff secured all the land he bargained for, since he viewed it upon the ground before the execution of his counter proposition as well as before the execution of the deed. Plaintiff, in his reply, denied the affirmative allegations of the answer and affirmatively alleged ''that the verbal statements and representations made by the defendant and upon which the plaintiff relied, as set forth in the petition, constituted a part of said contract of purchase and sale.'' Issue was formed, and the case was submitted to the court, who, upon proof heard, rendered judgment against defendant for the sum of

$4,231.30, which represented the value of the alleged deficiency of 49.78 acres at $85.00 per acre, and complaining of that judgment defendant appeals.

It is doubtful if any other single question has been more frequently before this court than the one relating to the rights of the parties to a real estate transfer where there was an excess or a deficit in the quantity of land agreed to be conveyed. Some of the cases involving the question in one or more of its phases are: Young v. Craig, 2 Bibb 270; Fisher v. May's Heirs, idem 451; Smith v. Smith, 4 Bibb 81; Cleveland v. Rodgers, 1 A. K. Mar. 193; Shelby v. Smith's Heirs, 2 A. K. Mar. 513; Rodgers v. Garnett, 4 T. B. Mon. 269; Hampton's Heirs v. Eubank, 4 J. J. Mar. 634; Brown v. Parish, 2 Dana 6; Harrison v. Talbott, idem 258; Clark v. Bell, 4 Dana 15; Meriweather v. Lewis, 9 B. M. 163; Fall v. McMurdy, 3 Met. 364; Dye v. Holland, 4 Bush 636; Fannin v. Bellomy, 5 Bush 663; Biggs v. Lexington and Big Sandy Railroad Co., 79 Ky. 470; Skinner v. Walker, 98 Ky. 729; Nave v. Price, 108 Ky. 105; Hall v. Ely, 25 Ky. L. R. 954; Collins v. Stodghill, idem 2015; Anthony v. Hudson, 131 Ky. 185; Anderson v. Dawson, 133 Ky. 711; Landrum and Adams v. Wells, 122 S. W. (Ky.) 215; Freeman v. Bow, 109 S. W. (Ky.) 878; Boggs v. Bush, 137 Ky. 95; Paisley v. Hatter, 143 Ky. 633; Morgan v. Combs, 32 Ky. L. R. 1205; Salyer v. Blessing, 151 Ky. 459; Rust v. Carpenter, 158 Ky. 672; Hartsfield v. Wray, 181 Ky. 836; Hunter v. Keightley, 184 Ky. 835, and Wilson v. Morris, 192 Ky. 469.

Some of those cases involved the right of rescission because of the excess or deficit in the quantity of land, while others dealt with the right of either party to have a specific performance of the contract when there was such excess or deficit; but the great majority of them involved the right of the vendee to recover for the deficit after the execution of the deed or the right of the vendor to recover for the excess after then. In some of them the defendant sought to establish an offset or counterclaim in a suit upon purchase money notes, which is the same thing in effect as a suit for damages by the vendee.

In every one of the cases cited the representation or statement as to the number of acres purported to be conveyed was in writing and expressly incorporated either in the contract of sale or in the deed, except in the case of Landrum and Adams v. Wells. There did not appear in the deed in that case any express statement as to the

number of acres conveyed. But, we have examined that deed, as copied in the transcript, and it gives the exact metes and bounds, together with the distances; therefore, *id certum est quod certum reddi potest.* Besides, the deed in the case expressly referred to the book and page containing the record of the deed executed to the vendor, and in that record it was stated that the land contained 157 acres; so that it may be truly said that there was a written statement evidencing the contract or representation as to the number of acres conveyed; thus showing that every case with which this court has dealt, where the question as to the rights of the parties in such cases were involved, the statement as to the number of acres contained in the tract was in writing.

The pioneer case (Harrison v. Talbott, *supra*), to which all of the subsequent cases refer, lays down these sound and fundamental principles for the guidance of the courts in adjusting disputes growing out of excesses or deficits in the quantity of land agreed to be conveyed:

"As was truly observed in Young v. Craig, the equity of each case must depend on its own peculiar circumstances. The relative extent of the surplus or deficit can not, *per se*, furnish an infallible criterion. The conduct of the parties, the date of the contract, the value and extent and locality of the land, the price, and other nameless circumstances are always important and generally decisive.

"Sales in gross may be subdivided into various subordinate classifications: First. Sales strictly and essentially by the tract, without reference in the negotiation or in the consideration of any estimated or designated quantity of acres. Second. Sales of the like kind, in which though a supposed quantity by estimation is mentioned or referred to in the contract, the reference was made only for the purpose of description and under such circumstances or in such manner as to show that the parties intended to risk the contingency of quantity, whatever it might be, or how much soever it might exceed or fall short of that which was mentioned in the contract. Third. Sales in which it is evident from extraneous circumstances of locality, value, price, time and the conduct and conversations of the parties, that they did not contemplate or intend to risk more than the usual rate of excess or deficit in similar cases, or than such as might be reasonably calculated on as within the range of ordinary contingency. Fourth. Sales which, though tech-

nically deemed and denominated sales in gross, are in fact, sales by the acre, and so understood by the parties.

"Contracts belonging to either of the two first mentioned classes, whether executed or executory, should not be modified by the chancellor when there has been no fraud. Such was the contract in the case of Brown v. Parish, lately decided by this court. Ante 6.

"But in sales of either of the latter kinds, an unreasonable surplus, or deficit, may entitle the injured party to equitable relief, unless he has by his conduct waived or forfeited his equity."

It would be a work of supererogation to analyze each of the cases referred to, or to show the applicability of the facts of each to the particular relief sought, or to state the allegations of the pleadings in each case, and we will refer the reader to the cases themselves for that information. It may be instructive to note that in the first classification made by Judge Robertson, in the Talbot case, he refers to the "estimated or designated quantity of acres." In the second classification he refers to the land as "a supposed quantity by estimation mentioned or referred to in the contract," and in referring to the quantity he says, "that which was mentioned in the contract." He also refers to proof of extraneous circumstances" consisting of locality, value, price, time, conduct and conversations of the parties, but such extraneous circumstances are admissible only, as he clearly shows, for the purpose of ascertaining the nature of the contract and what the parties really meant, i. e., whether they intended their contract to provide for a sale by the acre, or whether they contemplated risking the contingency of quantity, or whether it was their intention "to risk more than the usual rates of excess or deficit in similar cases, or than such as might be reasonably calculated on as within the range of ordinary contingency," or whether it was their intention that relief should be granted where the surplus or deficit was an unreasonable one, etc. It is nowhere intimated in that opinion that the representation or statement as to the number of acres could be proven by only oral testimony.

We are not unmindful that it has been repeatedly held by this court that the statement as to quantity of land contained in a writing is a matter of description, but it does not necessarily follow that the description forms no part of the *contract,* and the holding of the cases referred to is not necessarily inconsistent with a requirement that

the quantity of land, in order to be a part of the contract, should be stated either in the deed or some writing evidencing the contract. Speaking upon this point, this court in the Boggs case, *supra,* said: "While the recitation of the number of acres is a part of the description of the land, or may be, it is, not unusually, more than that. The purchaser buys not only the particular body of land, but the quantity it is represented (in the written recitation) to contain, the latter feature of the bargain affecting the amount of the consideration to be paid.

In the Paisley case, *supra,* we find this in the opinion: "The quantity or area of land embraced by a sale, described by metes and bounds, is, or at least may be, an essential inducement to the bargain." All of the cases hold that the expression "more or less," following the stated number of acres, is to relieve that statement from exactness, and to not allow for any excess or deficit where the sale is in gross, unless the disparity is so great as not to be deemed within the reasonable contemplation of the parties, which we have fixed, since the decision of the Talbot case, at the arbitrary amount of ten per cent. But in all cases where the sale is by the acre, relief will be granted regardless of the percentage of excess or deficit. Surely, it could not be contended that, in a sale by the acre it would not be necessary to include in the contract the represented number of acres, for if it was the *contract* to sell the exact acreage mentioned such fact must be stated in the contract. We can see no reason why the same requirement should not be exacted when the sale is one in gross, and the fact that in every case brought to this court, as we have seen, the acreage was stated in the written contract, whether the sale was one in gross or by the acre, is at least strongly persuasive that the alleged erroneous statement of the description relied on as to quantity should constitute a part of the contract, and being one relating to the sale of real estate must be in writing. In the instant case, however, as we have seen, the plaintiff expressly alleged in his reply that the erroneous statement or representation, as to the number of acres, was a part of his *contract of purchase.* Such contracts, as we have stated, are within the statute of frauds and must be evidenced by a duly executed writing.

What then are plaintiff's rights in a case like this, where the alleged misrepresentation rests in parol only? Clearly he would have the right, if the facts authorized it, to reform his deed or the writings evidencing the con-

tract, so as to include the representation upon which he
relies as a part of the contract, but which was omitted
therefrom through oversight and mutual mistake, or mis-
take on his part and fraud on the part of the defendant,
and recover, if at all, upon the contract as so reformed.
Such an action would be one *ex contractu;* and it might be
that he could also sue the defendant in tort in an action
*ex delicto,* in which it would be necessary to allege and
prove that the representations relied on were *falsely* and
*fraudulently* made for the purpose of deceiving him, etc.
Appellee has pursued neither course, but contents him-
self with only alleging that "in all the negotiations lead-
ing up to, and culminating in, said purchase, the defend-
ant represented and stated to this plaintiff that the above
described tract of land contained 200 acres, more or less."
There is no claim that such representation was in writ-
ing, nor is there any allegation that it was *falsely* or
*fraudulently* made. The presumption will be indulged
that it was innocently made, if made at all.

Were we to sustain the action under this condition of
the pleading, we would depart from and ignore all rules
of legal procedure known to us as well as set aside the
fundamental principles of pleading, for it requires both
pleading and proof to sustain a cause of action or a de-
fense. Moreover, the statute requiring contracts of this
kind to be in writing is based upon a sound public policy,
which is, that one shall not be required to part with title
to his real estate under any contract, the proof of which
cannot be sustained by a duly executed writing, or one
which, after being reformed, according to the principles
of law, covers the point involved.

To sustain this action, which, in its present condition,
is rested solely upon alleged oral representations as to
the quantity of land contracted to be sold, would not only
ignore the statute requiring "any contract for the sale of
real estate . . . or some memorandum or note there-
of" to "be in writing and signed by the party to be
charged therewith or by its authorized agent," but it
would open the door for endless similar controversies
which the statute was designed to prevent. The rights
sought to be protected by the statute would be open to the
assaults of oral proof, and the laudable purpose to pre-
vent "frauds and perjuries" by the enactment of the
statute would be repealed not by the legislature, but by
the courts; for it is well established that the contract or
memorandum, which the statute requires to be signed in

such cases, must contain a description of the land sold, a part of which is the quantity. Thus in 25 R. C. L. 649, it is stated in the text: "It is well settled that the memorandum, in case of a contract to sell land, must describe the land sold. If an insufficient description is given or there is no description, oral evidence is not admissible in aid of the memorandum, because the court will never receive such evidence both to describe the land, and then to apply the description." A great number of cases are cited in note 19 to the text. It is true, as shown on page 651 of the same volume, that it is not essential "that the description have such particulars and tokens of identification as to render a resort to intrinsic aid entirely needless when the writing comes to be applied to the subject matter," but the description may not be contradicted or added to through the introduction of extrinsic facts orally proven. We do not think that it was ever contemplated that the complaining party, in a case like this, might establish his right by oral proof alone, and without seeking a reformation of the contract in the manner provided by law, when the contract contained nothing upon the subject, though the omission was a part of the description of the land sold, since such description, as we have seen, is an essential part of the contract or memorandum required by the statute. None of the cases cited, nor any authority which we have been able to find, sustains any such view, and we are unwilling to adopt such a precarious and insecure rule. If it should be asked what is the difference between reforming a contract with the aid of oral proof and permitting a recovery thereon after reformation, and denying a recovery upon oral proof without such reformation, the answer is that in the one case the chancellor determines the facts, which must be done upon clear and convincing evidence, while in the other case the verdict of a jury would be sustained unless it was flagrantly against the evidence.

We refrain, for manifest reasons, from any expression of opinion upon the sufficiency of the oral proof, in this case, taken in connection with the written negotiations between the parties, to entitle plaintiff to any relief if his pleadings were sufficient in law to grant it, but hold only that under the state of the pleadings he was not entitled to recover.

Wherefore, the judgment is reversed with directions for proceedings not inconsistent with this opinion.