## Chilton v. Head.

(Decided February 17, 1922.)

### Appeal from Oldham Circuit Court.

1. Vendor and Purchaser—Deficiency in Quantity of Land.—The established rule in this state is that where there is a deficiency or excess of ten per cent or more in land contracted for or conveyed a court of equity will correct the error in the contract or conveyance if the injured party is not guilty of any fraud or culpable negligence or has not otherwise forfeited his equity resulting from the mistake.

2. Vendor and Purchaser—Deficiency in Quantity of Land.—The ten per cent rule applicable to deficits and excesses in contracts for the sale of land is applicable to sales in gross, unless the reference to the number of acres in the negotiations or contract was only for the purpose of description and in such circumstances or in such manner as to show that the parties intended to risk

the contingency of quantity, whatever it might be, in which event the rule is inapplicable.

3.  Vendor and Purchaser—Contract in Gross.—A contract by which one agreed to purchase and the owner agreed to sell a farm located on the Ohio river about one mile up river from Westport, Ky., in Oldham county, and containing 668 acres or more, and under which the seller agreed to guarantee it to contain not less than 665 acres construed to be a contract in gross under which the parties intended to risk the contingency of quantity. And the fact that the farm contained 758 acres did not entitle the seller to compensation for the excess, but it was his duty to convey the entire farm.

4.  Vendor and Purchaser—Description.—The words "668 acres or more" embraced in the contract held to be merely descriptive, and also evidence of the intention on the part of the seller to convey the entire farm whatever the acreage might be.

5.  Reformation of Instruments—Latent Ambiguity.—Even if the contract could be considered as containing a latent ambiguity the averments of the petition seeking a reformatoin of it, if supported by the evidence, would warrant the intervention of a court of equity in reforming the contract to conform to the agreement between the parties.

6.  Reformation of Instruments—Evidence.—Evidence examined and held to show that under the agreement between the parties the seller agreed to convey the entire farm for the consideration stated in the contract, and that fact should have been adjudged and the contract reformed to accord with the agreement.

ROBERT T. and WM. J. CROWE for appellant.

EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

This suit involves the construction of a contract for the sale of a farm in Oldham county. After various negotiations the parties reached an agreement and incorporated it into a contract, consisting of a written offer made by appellant to Everett Bedinger, real estate agent, and the acceptance of it by appellee, both parties being present with Bedinger at the time the offer was made, accepted and signed.

The contract reads:

"Louisville, Ky., Feb'y 25, 1919.

"Mr. Everett Bedinger, Agent,
       Louisville, Ky.

"Sir:

"I hereby agree to purchase the farm owned by P. S. Head, of LaGrange, Ky. Said farm being located on

the Ohio river about one mile up river from Westport, Ky., in Oldham county, and containing 668 acres, *or more;* together with all of said P. S. Head's interest in all livestock and feed now on said farm.

"In consideration for such purchase, I agree to give a general warranty deed to a three story brick business house on the corner of the public square of the court house, in the city of Winchester, Ky.; and I further agree to pay the sum of three thousand ($3,000.00) in cash and to deliver to said P. S. Head two thousand ($2,000.00) in government bonds, on or before May 1st, 1919, and further agree to execute to the order of said P. S. Head my six (6) notes, each for the sum of $4,166.66: payabe on or before one to six years from date respectively and one note for the sum of $2,000.00 payable on or before seven years from date, all of said seven notes to bear even date with deed of transfer to me of above mentioned 668 acre farm, and to bear interest at 6% from date till paid, and to be secured by vendor's lien retained upon said 668 acre farm, said deed to contain the usual insurance and precipitation clause. Said P. S. Head is to retain from the livestock his choice of two mules and the stallion named 'Tarry.'

"Said P. S. Head *agrees to have said farm surveyed and guarantees it to contain not less than 665 acres,* and abstracts to both properties to be furnished, and good and perfect titles to both properties to be guaranteed, free from any and all encumbrances.

"Immediate possession to both properties to be given. Said Winchester property to be taken subject to existing tenancy contracts.

"JESSE CHILTON.

"Accepted, Feb'y 25, 1919, P. S. HEAD."

The farm was surveyed by appellee and ascertained to contain 758 acres, which were 93 acres more than the guaranty of appellee. Appellee then refused to convey the land to appellant, but later by agreement conveyed 665 acres including the improvements, which appellant accepted, with the understanding that this action should be filed and prosecuted to determine the rights of the parties with respect to the 93 acres. This suit was filed by appellant who alleged that he bought the farm in gross and that appellee agreed to convey to him all the land embraced in it, but by mistake the agreement, as alleged, was not specifically included in the contract. He asked

that the contract be reformed to conform with the agreement between the parties, and that appellee be required to convey the additional 93 acres in compliance with it. The material allegations of fact were controverted by answer. After hearing proof the trial court denied the relief sought and dismissed the petition.

The judgment is evidently founded on the doctrine that, where there is a deficiency or excess of ten per cent in land contracted for or conveyed, a court of equity will correct the error by reforming the contract or deed.

In Harrison v. Talbott, 2 Dana 258, after reviewing numerous decisions relative to the principle referred to, it was announced that where it is apparent there has been a gross mistake as to the quantity, and the complaining party is not guilty of any fraud or culpable negligence nor otherwise has forfeited or waived his equity resulting from the mistake, he is entitled to relief from the technical or legal effect of his contract, whether it be executed or only executory.

This principle, differently stated, but always effecting the same result in its application, is too well settled for discussion. (Meriwether v. Lewis, 9 B. Monroe 163; Grundy's Heirs v. Grundy, 12 B. Monroe 269; Ruffner v. Ridley, 81 Ky. 165; Page v. Hogan, 150 Ky. 726; Salyer v. Blessing, 151 Ky. 459; Rust v. Carpenter, 158 Ky. 672; Hartsfield v. Wray, 181 Ky. 836; Hunter v. Keightley, 184 Ky. 835; Wilson v. Morris, 192 Ky. 469.)

The right to invoke it is not affected by the question as to whether the sale was by the acre or in gross, for if in gross and the disparity is so great as was probably not within the contemplation of the parties, the complainant is entitled to relief upon the same basis of computation as if the sale had been by the acre. (Boggs v. Bush, 137 Ky. 98; Paisley v. Hatter, 143 Ky. 632.)

While the relievable discrepancy, in the beginning, was arbitrarily fixed by this court at ten per cent or more of the supposed acreage, that practice has been so uniformly followed that the rule has now become thoroughly imbedded into the jurisprudence of the state. No sound reason for a departure from it has ever been advanced; besides experience has proved it to be founded on justice and fairness. It must be observed, however, that there will be found no decision wherein it has been applied, in which the contract of sale did not contain a representation or statement as to the number of acres pur-

ported to be conveyed, or some reference to a record wherein the number was shown. In such cases, too numerous to mention, it has been held, almost without exception, that the rule is applicable though the sale was made in gross.

In the Harrison case, *supra*, Chief Justice Robertson subdivided sales in gross into four subordinate classifications, the first of which is a sale strictly and essentially by the tract without reference in the negotiations or the contract to any estimated or designated number of acres. The second in which though a supposed quantity by estimation is mentioned or referred to in the contract, the reference is only for the purpose of description and in such circumstances or in such manner as to show that the parties intended to risk the contingency of quantity, whatever it might be or however much it might exceed or fall short of that which was mentioned in the contract. The third pertains to sales in which it is evident from extraneous circumstances that the parties did not contemplate or intend to risk more than the usual rate of excess or deficit in similar cases, or than such as might be reasonably calculated on as within the range of ordinary contingency. The fourth though technically deemed and denominated sales in gross are in fact sales by the acre and so understood by the parties.

It was held that contracts belonging to either of the first two classes would not be modified by the chancellor when there had been no fraud; and as to the latter two classes, unreasonable surplus or deficit would entitle the injured party to equitable relief unless he by his conduct had waived or forfeited his equity. Following that opinion the classification has been consistently adhered to in this jurisdiction. The latest recognition of it is in Beckley v. Gilmore, 192 Ky. 744.

The contract under consideration evidently does not fall within the first class, and if appellant's contention is to be upheld it must be located within the second. And here it should be noted that the contract was not a sale by the acre, for there was no mention of any price to be paid on an acreage basis. Neither was there any stipulation as to the number of acres sold, for the reference to "668 acres or more" is patently descriptive of the farm rather than indicative of the amount of land sold.

It was perfectly competent for the parties to contract so as to put themselves without the ten per cent rule applicable to deficits and excesses. Recognizing their

rights in this regard it will be observed that appellant agreed to purchase and appellee agreed to sell "the farm owned by P. S. Head of LaGrange, Ky. Said farm being· located on the Ohio river about one mile up river from Westport, Ky., in Oldham county, and containing 668 acres or more; together with all of said P. S. Head's interest in all livestock and feed now on said farm." And further it was provided "that the said Head agrees to have said farm surveyed and guarantees it to contain not less than 665 acres." The words "containing 668 acres or more" indicate that it was the purpose of appellant to purchase and of the appellee to sell the entire farm, whatever the acreage might be, and, by the other clause quoted, appellee guaranteed that the farm did not contain fewer than 665 acres. If the contract had provided for the sale of 668 acres, more or less, there would be plausible and perhaps unanswerable reason for saying that it was contemplated by the parties that the ten per cent rule should apply. But the stipulation that it should not apply is unequivocal. By the guaranty, appellee obligated himself to compensate appellant for any deficit of more than three acres below the 668 acres mentioned in the description of the farm, and in the first provision he agreed to sell his farm containing "668 acres or more," evincing a purpose to sell, for the considerations set out, the entire farm, including whatever excess over 668 acres there might be.

As we view this contract it was a sale in gross falling within the second class hereinbefore indicated. By the terms of it the parties put themselves without the ten per cent rule that allows relief for deficits or excesses. The obligation voluntarily assumed by appellee was to convey the entire farm, however much its area exceeded 668 acres. We conclude, therefore, that the contract is construable as imposing upon appellee the duty of conveying the entire farm, including the 93 acres in controversy.

Even if the contract be not susceptible of the construction just given, but could be said to contain a latent ambiguity, the averments of the petition, if supported by the evidence, would warrant a reformation of it conformable to the agreement between the parties. (Beckley v. Gilmore, 192 Ky. 744.)

Looking at the case from that point of view, it seems clear to us that it was the agreement between the parties

that the sale was to include the entire farm whatever acreage it might embrace, but if there was not so much as 665 acres appellant was to be compensated for the deficit at an obviously ascertainable rate. Appellant testifies to such an agreement, and even if the other supporting evidence is not altogether convincing, it is nevertheless of sufficient probative value, when considered in connection with appellant's evidence and with corroborative circumstances shown to exist, to establish the preponderance and to require an adjudication in accord with the allegations of the petition.

Appellant was corroborated by the real estate agent who is shown by the appellee's testimony to have so understood the contract, immediately after the survey was made, and to have said so when the subject was broached by appellee. There is other evidence corroborative of appellant's theory of the contract, and on that issue we conclude that the evidence supports his contention.

For this reason, as well as for the reason that the contract itself evinces the purpose to sell and convey the entire tract of land, we hold that, for the considerations named in the contract, it was the duty of appellee to convey the entire farm including the 93 acres in controversy.

Accordingly, the judgment is reversed for proceedings not inconsistent with this opinion.