## Hunter v. Keightley, et al.

(Decided June 20, 1919.)

### Appeal from Owen Circuit Court.

1. **Vendor and Purchaser—Forfeiture Clause in Deed Absolute.—** The vendee and plaintiff below in this case has no cause of action against the vendor growing out of the latter by prior conveyance granting a right of way across the land to construct an

electric railway since the forfeiture clause in the deed conveying the right of way had become absolute by the company not commencing the work in the time specified; and further, because plaintiff had not been evicted of any part of the land on account of the alleged right of way.

2.   Vendor and Purchaser—Sale at Price for Tract or Lot.—Where land is sold in gross but the acreage is stated in the deed the vendee may recover for a shortage in the land when it is as much or more than ten per cent, but if he purchase the land by the acre he may recover for the shortage whatever per cent it may be.

JOHN W. DOUGLAS and PERRY & CAMMACK for appellant.

W. A. LEE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On March 2, 1908, the appellee, and defendant below, William Keightley, purchased from J. K. Sebree a tract of land in Owen county, Kentucky, which tract was described in the deed by courses and distances and is stated therein as containing one hundred and sixty-six acres and two roods. Some time afterwards defendant sold and conveyed to Judge J. W. Cammack forty-three acres, one rood and two poles off of that tract and on the 8th day of October, 1915, he and his wife executed a title bond to plaintiff, and appellant, M. D. Hunter, agreeing to convey to the latter the balance of the tract as soon as the agreed consideration of $8,600.00 was paid according to the terms of the bond, the last installment of which was to be paid on March 1, 1916, at which time a deed was agreed to be executed to plaintiff. He made the payments according to the terms of the contract as set out in the bond and on the date agreed upon (March 1, 1916) defendant and wife executed the deed according to agreement in which the land conveyed was described as containing one hundred sixty-five acres and two roods, less the amount which had previously been sold and conveyed to Cammack, which was also described. This made the amount of land conveyed by the deed of defendant to plaintiff practically one hundred twenty-two and one-half acres, which was at the rate of $70.20 per acre.

Plaintiff took possession under his deed and by January 22, 1917, the day on which this suit was filed, he had discovered that instead of there being one hundred twenty-two and one-half acres in the tract conveyed to him

there was, only one hundred and eight acres, one rood and sixteen poles, which made a deficit of a fraction over fourteen acres or between twelve and thirteen per cent of the amount of land described in the deed.

The suit was filed to recover in part for this shortage at the rate of $70.00 per acre, it being alleged that the purchase was made under the agreement between the parties by the acre at that price. Another paragraph of the petition sought to recover damages which plaintiff claimed he was entitled to because of the existence of a right of way for a distance of about twenty-three poles and between forty or sixty feet wide which defendant had on April 1, 1910, conveyed to the Cincinnati, Louisville, Lexington and Maysville-Traction Company for the construction of a line of electric railway from Covington, Kentucky, to Owenton, Kentucky, and which right of way lay along the pike fronting the land in controversy. As amended the petition asked $990.50 for the shortage in the land and $600.00 damages because of the existence of the right of way.

The answer denied the allegations of the petition and averred that the sale of the farm was in gross and without reference to the number of acres contained in it. In answer to the complaint made in the petition about the right of way defendant averred that plaintiff knew of its existence, and further that the deed for the right of way was on record at the time of the sale of the farm to plaintiff and that if he did not have actual knowledge he had constructive knowledge of it, and still further, that in the deed conveying the right of way it was stipulated that "it is expressly understood and agreed that the construction of this road must be begun in good faith within twelve months from date hereof or this grant will become null and void." That there had been a forfeiture by the traction company since it did not begin within twelve months in good faith or otherwise the construction of the road. Still another paragraph relied upon a former suit filed by plaintiff against defendant to recover damages for the right of way which suit had been disposed of by a judgment in favor of defendant, and that judgment was relied upon as an estoppel; but for some cause that paragraph of the answer was stricken and the ruling of the court thereon is not before us for review.

The suit was brought in equity and was tried by the court without the intervention of a jury and after hearing the evidence a judgment was entered dismissing the petition and to reverse it plaintiff prosecutes this appeal.

We will first dispose of that branch of the case relating to the claim on account of the existence of the alleged right of way to the traction company. But little need be said with reference thereto. Conceding that plaintiff did not know of the existence of the right of way at the time he made the trade for the purchase of the farm (which is exceedingly doubtful) the encumbrance created by the contract for the right of way, so far as this record shows, had expired and had come to naught because of its own terms, for it is both alleged and proven that nothing whatever was done by the company towards the construction of the road within the time provided by the terms of the forfeiture clause contained in the deed to the company. But perhaps a more substantial obstacle to plaintiff's right to recover for this item is that he claims the right to do so (as he must have done) under the warranty contained in the deed and he does not allege or attempt to prove that he has ever been evicted by the company or anyone claiming any rights under the writing creating the servitude of which he complains.

The doctrine is so fundamental in this state, and in real estate law generally, that before a vendee can recover against the vendor upon the warranty he must both allege and prove an eviction, that we deem it unnecessary to encumber this opinion with citation of authorities upon the point. It results therefore that the court properly dismissed the petition so far as this item is concerned.

An altogether different question, however, is presented by the paragraph of the petition seeking damages for a shortage in the number of acres actually conveyed. That there is a shortage of fourteen acres there can be no doubt. Two surveyors of admitted experience and qualifications made accurate surveys of the tract of land described in the deed after excluding the portion conveyed to Cammack. They calculated the number of acres in the tract by the "latitude and departure" method which according to their testimony is the most accurate and certain one. One of them found the tract to contain one hundred eight and one-fourth acres and sixteen poles,

and the other one, one hundred seven acres, three roods and twenty poles. The last witness had previously calculated the number of acres by the "triangle and square" method as being one hundred nine acres, two roods and thirty-two poles. These were all the witnesses who testified upon the subject and we think it can be safely said with fairness to all parties that there is at least fourteen acres less in the tract than was described in the deed. This creates a shortage of between twelve and thirteen per cent, and under numerous opinions of this court entitles the vendee to recover for the shortage whether the purchase was made by the acre or in gross.

In the comparatively recent case of Rust v. Carpenter, 158 Ky. 672, the defendant who was the vendee, in defense to a suit on one of the purchase money notes, alleged a shortage of the number of acres in the tract of more than ten per cent of the acreage described in the deed and pleaded the value thereof as a counterclaim. Instead of allowing damages the trial court rescinded the contract, which judgment on appeal by plaintiff therein was reversed, not, however, because defendant was not entitled to recover for the shortage in the number of acres but because the court erroneously decreed a rescission when it was neither asked for nor the right to it supported by the testimony. Upon the right of the vendee in cases like this to relief by recovering damages against the vendor for a deficit in the number of acres this court in that opinion said:

"The deficiency or shortage in the quantity of the land is undoubtedly eighteen and two-fifths acres, as claimed by appellee, this fact being established by a survey made of the land after the institution of this action; and in view of the amount or extent of this shortage it is not material whether appellee purchased it in gross or by the acre. It is a well known rule in this jurisdiction that where, in the sale of a tract of land, there is a deficit of as much as ten per cent or more in the quantity, the purchaser will be entitled to relief to the extent of the value of the deficit; that is, what the value of the quantity contained in the deficiency would, if included in the deed, have borne to that of the entire tract as described in the deed; and this is so whether the sale be made in gross or by the acre. The words 'more or less' in a deed relieve only the necessity for exactness and not from gross deficiency.

"This rule obtains, too, whether the relief asked on account of the deficiency be based upon a claim of fraud or mistake; so, if the deficiency be as much as, or more than ten per cent, relief against the same will be granted, if, at the time, the parties are ignorant of the deficiency or the vendee is deceived by the misrepresentations of the vendor as to the quantity. The above rule has been announced by this court in the following cases: Harrison v. Talbott, 2 Dana, 266; Smith v. Smith, 4 Bibb 81; Shelby v. Shelby's Heirs, 2 A. K. Mar. 504; Hall v. Ely, 76 S. W. 48; Boggs v. Bush, 137 Ky. 95, and other cases."

The "ten per cent rule" as it is sometimes called, grew out of the fact that when land was bought in gross it would be presumed that the parties each agreed to make allowances for slight deviations from what the tract was supposed to contain, and since there was no fixed rule the court adopted it as the most feasible measurement of the rights of the parties. It does not apply where the purchase is by the acre since in that case there is no room for speculation as to the presumed intention of the parties. They have in that case stated by the express terms of their contract that the purchase is not only made by the acre but also the agreed price per acre is stated.

And so in the case of Hartsfield v. Wray, 181 Ky. 836, it is said:

"But this rule (the ten per cent rule) has no application where the sale is by the acre, as in this case; and, in no case, can the vendor's liability be scaled, as contemplated by Hartfield's version of the rule. If the vendor is liable, he is liable for the entire shortage. And, that he is liable for the entire shortage where his vendee, in a sale of land by the acre, receives less than his deed called for, is too well settled to be now discussed. Anthony v. Hudson, *supra*." (131 Ky. 185; 133 Am. St. Rep. 231.)

Under these authorities defendant in this case is liable if the sale to plaintiff was made by the acre whether the shortage be as much as ten per cent or not, and under the doctrine of the Rust case and others therein referred to he is liable if the shortage is as much or more than ten per cent although the sale may have been made in gross. We have seen that the shortage in this case was more than ten per cent, and there can be no escape therefore from the conclusion that plaintiff manifested his right to recover for the shortage of fourteen acres, which amount we adopt as being as near to the correct amount

as we can ascertain, though we are convinced that it is slightly more than that.

The total amount of $8,600.00 for one hundred twenty-two and one-half acres would make the price per acre a small fraction in advance of $70.20, but since plaintiff does not claim the right to recover any more than $70.00 per acre for the shortage we have concluded to fix the amount to which he is entitled at $980.00, for which sum he should have recovered judgment, and upon which he is entitled to interest from the time he made the last payment, on March 1, 1916.

The doctrine of the Rust case herein applied is not in conflict with the principles announced in the case of Louisville Soap Company v. Louisville Cotton Oil Company, 168 Ky. 340, since the facts of the two cases are so different that even the mind of the layman can detect them. In that case there was never any representation by the vendor as to the quantity of land sold; the vendee was perfectly familiar with the external boundaries of the lot, and bought it as a manufacturing plant and not because it contained any understood or supposed quantity of land. Besides the vendee before the deed was executed to him or he had accepted it, learned the exact amount of land contained in the lot and with that knowledge he accepted the deed and paid the consideration without murmur, complaint or protest. It was found from the evidence that the transaction concerned only the sale of a manufacturing plant by one company to another one engaged in like business and that the vendee obtained by his deed all that he contracted for and that there was no evidence from which it could be presumed that there was any mistake upon the part of anyone as to the quantity of land sold.

Wherefore the judgment is reversed with directions to enter a judgment in accordance herewith.