## Wigginton v. J. D. Holbrook and Mary F. Holbrook.

(Decided February 21, 1922.)

### Appeal from Ohio Circuit Court.

1. Vendor and Purchaser—Deficiency in Quantity of Land.—A vendee of land may have a recovery for shortage in acreage if it amounts to ten per cent or more in quantity sold, and this is true whether the sale be in gross or by the acre.

2. Vendor and Purchaser—Deficiency in Quantity of Land.—Where the parties to a deed by mutual mistake recite that the tract of

land conveyed contains 58½ acres when in fact it contains only about 44, the error occurring by reason of the fact that the parties had failed to deduct from the original number of acres contained in the tract, from which several small tracts had been conveyed, a tract of 13½ acres, the grantee in a suit to recover for the shortage of acreage will be denied recovery.

3.   Vendor and Purchaser—Deficiency in Quantity of Land.—When the vendor does not represent the tract to contain a specified number of acres but merely offers to sell the boundary for a given sum of money, and shows the proposed purchaser the boundary lines, which are well marked, but in the preparation of the deed the draftsman through mistake in calculating the number of acres contained in several small tracts sold off the original tract, but all of which were divided from the main tract sold, by a public county road, the vendee was not deceived or misled about the tract of land he was purchasing, and was not entitled to have a recovery for a deficiency in acreage although his deed, through the mutual mistake of the parties, recited that it contained 58½ acres when the tract only contained 44.

BARNES & SMITH for appellant.

HEAVRIN & MARTIN for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

About the year 1878 appellee, J. D. Holbrook, became the owner of a tract of ninety-two acres of land in Ohio county, on to which he moved and has since resided with his family, up to about the time of the commencement of this action, when he sold what remained of the tract to appellant Wigginton for $3,100.00. Appellant Wigginton brought this suit against appellee Holbrook and wife to recover for a deficiency of acreage amounting to more than $700.00 at the average price per acre. He bases his action upon the following facts:

In 1895, Holbrook sold one Hudson 13½ acres from the most southernly part of his ninety-two acre tract, and Hudson took possession of said 13½ acres and has since held and claimed the same. His deed was properly recorded in the office of the clerk of the Ohio county court soon after it was delivered to him by Holbrook. At a later period Holbrook sold to F. M. Hoover five acres from the southern end of his tract. At a later period Holbrook sold to said Hoover 5½ acres from the southern part of the tract. At another time Holbrook sold to Robert Holbrook nine acres from the southern part of the tract. At another time fourteen acres of the said tract were sold under judgment of the court, and this is

now owned by Hoover. All these deeds from Holbrook were properly recorded in the office of the clerk of the Ohio county court before Holbrook sold to Wigginton. A half acre lot for school house purposes was taken from the extreme northern part of the tract. At the time Holbrook sold to Wigginton on September 14, 1918, he pointed out to Wigginton in a general way the outside boundaries of the tract, but in making the deed he neglected to except from the boundary all of the small tracts above mentioned which had been conveyed by Holbrook to other persons. The deed described the tract as conveyed to Holbrook in 1878 and then undertook to except from that boundary the tracts sold by Holbrook to others, and in doing so used the following language:

"There is excepted from the above boundary of land the following tracts, which have heretofore been sold and conveyed: A tract sold to F. M. Hoover and bounded as follows:

"Beginning at a stake being the corner of F. M. Hoover's tract of land bought from the Farmers Tobacco Warehouse Company; thence with Wm. Boils' line 14 poles to a corner on Wm. Boils' line; thence E. 68 poles and 10 links to a large oak stump on the road leading from Harmon's Ferry road by R. C. Hudson's; thence with said road S. 9 poles and 6 feet to a stake, being the corner of F. M. Hoover; thence with his line 68 poles and 10 links to the beginning, containing 5 acres.

"Also 5½ acres of land sold to F. M. Hoover off the south end of said tract of land and adjoining the five acres above described.

"Also 9 acres sold off the west side of the north end of said tract heretofore sold to Robert Holbrook.

"Also 14 acres, now owned by F. M. Hoover, which were cut off the said tract of land by an order of the Ohio circuit court, on the south end of said tract.

"Making in all 33½ acres which have heretofore been conveyed, and leaving approximately 58½ acres which is conveyed by this deed."

It will be observed that the 13½ acre tract conveyed to Hudson, and the half acre tract occupied by the school, are neither mentioned in the exceptions, and these two tracts are the ones that form the basis of appellant Wigginton's complaint, for he says that the tract conveyed to him by Holbrook contains only 43 acres instead of 58½ acres as recited in the deed from Holbrook to Wigginton.

The following map indicates in a general way the location of the original boundary owned by Holbrook; the dotted lines south of the New Bethel road include the five small parcels sold by Holbrook to Hudson, Hoover and Robert Holbrook.

At the time Holbrook sold to appellant Wigginton he owned and claimed only that part of the land lying north of the New Bethel road, a public highway, to the Hudson road, and with the Hudson road north to the Harmon Ferry road, and with that road to the corner of the lands of E. Wigginton, a brother of appellant; thence south with the Wigginton line to the lands of Boils; thence with the Boils line south to the New Bethel road. Appellant Wigginton admits that he was born and reared in the neighborhood of the Holbrook lands and knew the location of each of the roads, as well as the line between the Holbrook lands and that of E. Wigginton and W. L. Boils. He also knew that Hudson claimed and occupied the 13½ acre tract sold to him in 1895 by Holbrook, and that Hoover and Robert Holbrook owned, claimed and occupied small portions of the Holbrook farm south of the New Bethel road. In fact appellant Wigginton lived only a short distance from Holbrook, and when Wigginton was a small boy he frequently visited at the Holbrook home and has been acquainted with its location and that of the neighboring farms at all times since. He does not claim that appellee Holbrook made any false or fraudulent representation for the purpose of deceiving or misleading him, and he admits that he understood that the land he was buying lay north of the New Bethel road, and was bounded by that road on the south, and on the east by the Hudson road and the Harmons Ferry road, and on the north by the Harmons Ferry road, and on the east by the lands of E. Wigginton and W. L. Boils, but he vigorously insists that as appellee Holbrook told him that he had been listing the land as fifty acres, and that he believed it contained fifty acres more or less, and the deed to him recited 58½ acres, he did not get all that he purchased or as many acres as he contracted for, and is entitled to recover for all shortage in acreage at the average rate per acre figured on a basis of $3,100.00 for 58½ acres. The lower court denied him this relief, but adjudged him entitled to a rescission of the contract and return of all the purchase money with interest paid by Wigginton to Holbrook if appellant Wigginton desired a rescission, but on Wigginton declining to demand or accept a rescission, the court entered an order dismissing his petition, and from that judgment he appeals to this court.

Is appellant Wigginton entitled, as a purchaser, to re-
cover of the vendor, Holbrook, upon the foregoing facts
and circumstances, the alleged value of the shortage in
acreage?

It is well settled that a vendee of land may have a
recovery for a shortage in acreage if it amount to ten
per cent (10%) or more in quantity sold, and this is true
whether the sale be in gross or by the acre. The words
"more or less" in a deed relieve only from the necessity
for exactness, and not from gross deficiency. Nor is this
right confined to cases of fraud or mistake, but relief may
be had in every case where there is a deficiency of 10%
or more, even though the deficiency result from mistake
or ignorance of the parties. Harrison v. Talbott, 2 Dana
266; Smith v. Smith, 4 Bibb 81; Shelby v. Shelby's Heirs,
2 A. K. Mar. 504; Hall v. Ely, 76 S. W. 48; Boggs v. Bush,
137 Ky. 95; Rust v. Carpenter, 158 Ky. 672, 166 S. W.
180; Gragg v. Levi, et al., 183 Ky. 182.

That rule has no application to the facts of this case,
for Holbrook did not sell to appellant Wigginton any
land except that which lay north of the New Bethel road
in the farm owned by Holbrook, and that was the land
contemplated by both Wigginton and Holbrook at the
time of the sale, and there was no thought or intention
on the part of either of them that the 13½ acres, which
causes the deficiency of which Wigginton complains,
should be or would be included in the conveyance. Their
minds met upon the sale of the tract north of the New
Bethel road. Holbrook agreed to take $3,100.00 for that
boundary of land, and Wigginton agreed to buy it at that
price and to pay the money at certain stated times. Both
parties intended to describe the boundary of land so as to
include all that Holbrook owned at the time of the sale to
Wigginton, and to exclude all the boundaries or parcels
sold by Holbrook to others, thus leaving in the conveyed
boundary only that owned at the time by Holbrook. It
was merely a mutual mistake in the description of the
land sold.

It is insisted by appellant Wigginton that Holbrook
represented this boundary as containing 58½ acres, but
we do not think that the evidence sustains this insistence.
The most that Holbrook said was that he had
been listing the property with the assessor as
50 acres, but that he did not know how many acres were
contained in the boundary, that there might be more, or

less than 50 acres. He repeated this to Wigginton several times, and when the deed was prepared and the exceptions made and found to be 33½ acres and this number of acres were subtracted from 92, leaving 58½, Holbrook said to Wigginton and to the draftsman of the deed that he did not think there were as many as 58 acres in the boundary. The sale was not by the acre, but in gross. There was a good nine-room dwelling house on the place, two barns, orchard and other improvements. Land to the side of the tract in controversy sold about that time for $80.00 per acre. There is no evidence, however, tending to show that Wigginton based his purchase upon the fact that there were 58 acres in the boundary, for no such representation had been made to him by any one. In fact he had been told by Holbrook that he had been listing the tract at 50 acres, and there was nothing said about 58½ acres until the deed was prepared. That was after the agreement had been reached between Holbrook and Wigginton, whereby the latter was to pay the former $3,100.00 for the boundary of land.

As soon as Wigginton made complaint about the shortage of acreage, appellee Holbrook offered to rescind the contract and give him back his money with interest, but this Wigginton declined to accept. Holbrook, by his pleading, offered to rescind the contract and to return to appellant Wigginton his money with interest. Later appellee Holbrook asked to have the deed, which expressed the contract between them, reformed so as to embody the real contract of the parties, and this the trial court granted. In this the trial court was supported by the opinion in the case of Railey v. Roberts, 33 R. 221, 109 S. W. 903, where a tract of 70 acres of land was sold for $9,000.00, but represented to contain 85 acres; the deal was negotiated by some real estate brokers for the owner. The purchaser sued for $1,500.00 damages for shortage in acreage, and in disposing of the matter this court said:

"It appears from the record that appellee placed this land with the real estate firm of Morris & Shelton for sale, and they alone negotiated the trade with appellant. It is conceded that this firm represented to appellant that the survey contained 85 acres. They executed a writing witnessing the trade, and signed the name of appellee to it, in which it was stated that the survey contained 85 acres. The agents, Morris & Shelton, stated

in their testimony that their recollection was that appellee stated to them that there was 85 acres in the survey. It appears from the record that these agents intended no wrong. They believed that the survey contained 85 acres, and that appellee had so represented it. Appellee testified that he did not make any statement to them as to the number of acres in the survey; that he knew at the time that it contained only 68 or 70 acres; that he directed them to sell the survey for $9,000.00; that the land was worth that much and more, and that he had no intention of parting with it for a less sum. The proof for appellee showed that the land was worth that amount. He denied any fraudulent purpose to cheat or defraud appellant, and alleged his willingness to rescind the trade if she did not desire to keep the land at the price fixed by him. The court on motion struck this allegation from his pleadings. We are of the opinion that the court erred in this. We are convinced by the evidence that there was no fraudulent intent or purpose on the part of appellee or his agents to obtain any advantage in the trade; that there was a misunderstanding between the parties, their minds having never met. Appellant thought she was buying 85 acres of land for $9,000.00. Appellee believed that he was selling a survey consisting of 68 or 70 acres for that sum, and did not know at the time of the sale that appellant was laboring under a false impression as to the number of acres in the survey. Under these circumstances, it would not be equitable to hold appellant to the trade and make her pay the whole of $9,000.00 for the survey of land, for it contained 15 acres less than she was led to believe it contained at the time she purchased it. It would also be inequitable to force appellee to lose the price of 15 acres, for he did not intend to part with his land for less than $9,000.00; nor did he knowingly or intentionally commit any fraud in obtaining the contract of sale. Under these facts, the court erred in dismissing her petition. It is true she prayed in her petition for $1,500.00 in damages for the deficiency, but she also prayed for all proper and general relief. The court correctly dismissed her claim for damages, but it should have allowed her to rescind, if she desired to do so on equitable principles, and, on the return of the case to the lower court, it should grant her this relief, allowing her to reconvey the land to appellee upon the payment to her of the purchase price—that is, the cash she has paid,

with its interest—and the return to her of the two notes she executed and the value of any permanent improvements made upon the land, if any, to be credited by the reasonable rental value of the land during the time she has held it, giving her the option to rescind upon the principle stated, or to keep the land and confirm the trade as made and pay the notes which she executed.''

The rule applied in that case does exact justice here. A recovery in this case by Wigginton would be gross injustice. It would not be applied, however, if the parties had intended a sale by the acre, or it had been claimed by Holbrook that the boundary contained any specified number of acres; in such case, the vendee is entitled to recoup damages equal to the deficiency in acreage, but as this whole controversy arose out of a mutual mistake it can be corrected in the manner adopted by the trial court in its judgment.

For the reasons indicated the judgment is affirmed.

Judgment affirmed.