## Morris, et al. v. McDonald.

(Decided December 8, 1922.)

### Appeal from Franklin Circuit Court.

1. **Vendor and Purchaser—Deficiency in Quantity of Land—Sale in Gross.**—Where the sale of land is in gross, and there is a deficit in quantity of as much as ten per cent, the purchaser is entitled to reimbursement for the deficiency, unless the sale was strictly and essentially by the tract, without reference in the negotiations or contract to any estimated or designated number of acres, or unless the supposed quantity by estimation was mentioned or referred to in the contract only for the purpose of description and in such circumstance or in such manner as to show that the parties intended to risk the contingency of quantity, whatever it might be.

2. **Vendor and Purchaser—Deficiency in Quantity of Land—Sale in Gross.**—In an exchange of farms, whereby one of the deeds described the tract of land conveyed by metes and bounds, and recited that it contained "350 acres, 3 roods and 23 square poles," excluding three small tracts amounting to approximately ten acres, and there was evidence to the effect that, in the negotiations leading to the trade, the number of acres in the farm was discussed, the transaction comes within the general rule applicable to sales in gross, and, as the deficit in acreage amounted to more than ten per cent, the purchaser was entitled to recover compensation at the ratable price per acre for the deficiency.

3. **Vendor and Purchaser—Survey—Laches.**—The failure of the grantee to have the land conveyed to him surveyed at the time the deed was delivered, or before it was resold seven years later, was not such laches on his part as precluded his right, otherwise existing, to maintain an action for money paid by mistake on account of deficiency in quantity.

4. **Vendor and Purchaser—Deficiency in Quantity of Land.**—The right to recover for a deficit in the number of acres of land conveyed is based on the contract, which the law implies, to repay money paid by mistake, and the payment and the discovery of a mistake must both concur before a recovery can be had.

5. **Vendor and Purchaser—Deficiency in Quantity of Land—Limitation of Actions.**—An action to recover money paid by mistake on account of shortage in the acreage of land conveyed in 1913, which shortage was not discovered until 1920, and for which conveyance final payment was not made until 1918, is not barred by the five year statute of limitation, since the statute did not begin to run until the overpayment was made, which occurred within five years of the date of the filing of the action.

6. Vendor and Purchaser—Recovery of Purchase Money Paid.—An offer to rescind a contract, which cannot be accepted because of changed conditions and the impracticability of placing the parties in statu quo, does not constitute a defense to an action to recover money paid by mistake, unless the changed conditions occurred after the party seeking the recovery had knowledge of the mistake.

HAZELRIGG & HAZELRIGG, B. G. WILLIAMS and CHINN & COLLINS for appellants.

LESLIE W. MORRIS and HOBSON & HOBSON for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

This equitable suit was instituted in March, 1920, to recover an alleged overpayment on a tract of land conveyed to appellee by appellants. Judgment was rendered in the lower court for $3,375.00, with interest thereon from September 1, 1916, the amount claimed, and this appeal is prosecuted to reverse that judgment.

In 1913 appellants traded a farm on the Owenton turnpike, near Frankfort, supposed to contain 390 acres, to appellee for a farm he owned on the Versailles pike, consisting of 155 acres. There were two tracts in the farm conveyed by appellants, the first known as the Robert Church land, described in the deed as containing 350 acres, 3 roods and 23 square poles, less three excluded tracts amounting to about 10 acres, and the second containing 50 acres adjoining the first, which had formerly belonged to the father of appellee, and on which appellee himself had lived the greater part of his life. Appellee took possession of the land when the deeds were exchanged. Between 1913 and 1920 he sold three small parts of it, and in 1920 be contracted to sell his remaining interest, but, on having a survey of it made, discovered that the Robert Church tract, instead of containing 340 acres as supposed by him and also by appellants, contained only 296 acres, there being a shortage of about 45 acres. In the trade that was made, appellee agreed to pay appellants $5,600.00, and executed his promissory notes for $2,000.00 and $3,600.00, respectively, due on January 1, 1915. The note for $2,000.00 was paid when due, but the note for $3,600.00 was not paid until June 23, 1918. That note was held by the appellants until September 1, 1916, when it was assigned,

but appellee regularly paid the interest to that date and paid the principal on the later date mentioned.

Appellants contend that the transaction was nothing more than an exchange of farms, in which it was not contemplated that appellee was to receive any number of acres of land, but merely that he was to receive the boundary described in the deed, with which he was familiar, having had the land under lease for three years previous to the conveyance. Insisting on this view of the trade, counsel call attention to the evidence showing that appellee had lived on the fifty acre tract adjoining the Robert Church land practically all his life, had frequently been over the Church land, as a boy and later as a man when he had it under lease, knew its boundaries, which were well defined, and for a great many years had desired to own the farm. These undeniable facts are said to indicate an intention on his part to risk the contingency of quantity, whatever it might be, or however much it might exceed or fall short of that mentioned in the deed. His occupancy of the land for nearly seven years before instituting this suit or before discovering or claiming that there was any mistake in the acreage, his apparent and expressed satisfaction with the trade, and the fact that he sold the land in different parcels for a sum aggregating nearly $40,000.00, although he asked for the farm that was traded only $21,-000.00, are all referred to as supporting the contention.

For appellee it is said that the sale of the land at a handsome profit was made possible by the tremendous increase in land values occurring shortly after the trade was made, and that the farm on the Versailles pike could also have been sold when prices were high for a large profit or for as much as $300.00 an acre. Appellee testified that the Robert Church farm, when he acquired it, was worth only $75.00 an acre, and on this point he was corroborated by a number of witnesses who lived in that community. With respect to the negotiations with Richard Morris, he said: "I told him I would take $135.00 an acre for my place and give him $75.00 for his original tract and $500.00 for my father's piece of land." Admittedly the trade was not closed on that basis, but during the negotiations Morris, according to appellee, said that he had 400 acres in the two tracts and it could be sold for $75.00 an acre. Morris denied making any

statement as to the acreage, but said that he just gave McDonald a deed that called for 350 acres, ''I gave it to him just as I got it.'' When asked if he inquired into the acreage of the McDonald tract, he repied, ''Yes, sir, and he said 155 acres, maybe a little over, and I believe he said he wanted $135.00 an acre for it.'' The witness also said that he estimated, in dollars and cents, what that acreage would amount to.

The deed from appellants to appellee describes the Robert Church tract by metes and bounds, and then recites that it contains ''350 acres, 3 roods and 23 square poles,'' excluding three small tracts amounting approximately to ten acres. The question is, does this recitation in the deed, in the light of the negotiations leading to the transaction, bring the case within the rule that where a sale is in gross, and the deficit in acreage amounts to ten per cent or more, there is a relievable discrepancy? If the sale is by the acre, compensation for any discrepancy, no matter how small, will be allowed; but if it is in gross, the rule is that the deficit must be as much as ten per cent before the complaining party is entitled to relief. The latter rule, however, is subject to two well established exceptions laid down in Harrison v. Talbott, 2 Dana 258, and consistently followed by this court. The first is a sale, strictly and essentially by the tract, without reference in the negotiations or contract to any estimated or designated number of acres; and the second is, where a supposed quantity, by estimation, is mentioned or referred to in the contract, but the reference is only for the purpose of description and in such circumstances or in such manner as to show that the parties intended to risk the contingency of quantity, whatever it might be. In neither of these classes of cases will the contract be modified by the chancellor, if no fraud is shown to exist. Beckley v. Gilmore, 192 Ky. 744; Chilton v. Head, 193 Ky. 768.

Appellants attempt to place this case within one of the exceptions mentioned. But, eliminating the question of fraud which is not claimed by appellee, it is obvious that the case does not fall within the first exception, since reference was made in the contract to a designated number of acres; and this exception applies only where the sale is strictly and essentially by the tract, without any reference whatever in the negotiations or contract to the acreage. Nor is the case, in our judgment, embraced within the second exception, for, while it may be

assumed that the guaranty in the deed does not apply
to the exact acreage mentioned, the recited number
of acres cannot be regarded as merely descriptive of the
land. Considering the statement in the deed as to the
number of acres in conjunction with appellee's testi-
mony, and particularly that part of it dealing with the
negotiations, wherein it appears that he indicated to
Morris that he would trade on a basis of $75.00 an acre
in value, and Morris said there were 400 acres, it seems
to us that it cannot be said that the supposed quantity
was referred to only for the purpose of description, and
not in such circumstances or manner as indicated that
the parties intended to risk the contingency of quantity.
That was the view of the trial court, and, in our opin-
ion, it is abundantly sustained by the evidence.

It is earnestly insisted that a recovery should be
denied on the ground of laches on the part of appellee.
And a further insistence of similar effect is that the ac-
tion is barred by limitation. The deed was made in 1913,
and the correct acreage was not ascertained by appellee
until January, 1920. This action was filed on March 2,
1920. It is admitted that all the parties believed that
the Robert Church tract contained approximately 340
acres of land. The error is not in the calls of the deed,
but in the calculation based on those calls. The same
error appears in the deed to appellants of 1889. In these
circumstances it is argued that appellee should have dis-
covered the error before placing himself in a situation
where a rescission of the contract could not be had. The
foundation of the argument is that a simple calculation
of the calls described in the deed would have shown the
shortage. This statement is correct, but to hold that the
failure to discover the mistake before 1920 constitutes
a bar would impose a measure of diligence that the facts
in the case, as we understand their effect, do not justify.
We have no hesitancy, therefore, in saying that this
ground of the appeal is unsustainable.

As to whether the statute of limitation began to run
when the trade was finally consummated, or only con-
currently with the final payment, is the question pre-
sented by the plea of limitation. The deed was made in
1913, more than five years before the suit was filed, but
the $3,600.00 note given by appellee at that time was not
paid by him until 1918, and that note was held by appel-

lants until September, 1916. Appellants' contention is based on Dye v. Holland, 4 Bush 635. On a casual reading of the opinion in that case there is a seeming conflict between it and later decisions of this court, but a careful examination of it will disclose that, on the point of inquiry here, it announces no rule at variance with the general rule established in this jurisdiction. There the sale was made in 1854 and the plaintiff put in possession of the land. He was sued for the balance of the purchase money in 1856, and attempted to defend the action on the ground that the quantity of the land was deficient. In January, 1857, he accepted the deed, and in 1861 caused a survey to be made, and, as he claimed, discovered the deficit. He did not bring suit until November, 1862, and it was held that he ought to have discovered the error more than five years before the action was filed. In view of his defense to the note in 1856, it is not an unreasonable interpretation of his conduct to say that he was chargeable with knowledge of the deficit as of the date the defense was made. It does not appear, from that opinion, whether the final payment on the land was made more than five years before the suit was filed; and the question of whether the statute started to run from the date that he ought to have discovered the mistake, or from the date of his final payment on the land, was not raised or discussed in the case. Hence the effect of deferred payments on the running of the statute was not determined.

Assuming that appellee should have discovered the shortage before 1920, still it could not, in our judgment, be held that he ought to have discovered it when the deeds were exchanged or before the overpayment was made; and the claim is not barred, unless the overpayment was made more than five years before the suit was filed. The right of action, in a case of this kind, is based on the contract which the law implies to repay money paid by mistake, and as said in Biggs, etc. v. Lexington and Big Sandy R. R. Co., 79 Ky. 470, "payment and the discovery of the mistake must concur before a recovery can be had." In Nave v. Price, 108 Ky. 105, this court said: "This court in several cases has ruled that the right to relief for a deficit is based on an implied assumpsit to refund the money paid by mistake. Crane v. Prather, 4 J. J. Marsh 75; Dye v. Holland, 4 Bush, 635;

Young v. Craig, 2 Bibb 270; Harrison v. Talbott, 2 Dana 258. This being the principle announced by this court, the cause of action is not based upon a deed or contract of sale of the land, nor for fraudulent representations made in the deed nor to reform it, nor is the action for a rescission of the contract of sale, but it is based upon the implied contract to refund the money which was paid as a result of the mutual mistake.''

It was held in the Nave case that the statute of limitations begins to run from the moment of payment, for it is then only that the cause of action accrues, since, until payment is made, a refund of the money paid cannot be had as no right of recovery exists. In the case at bar, $3,600.00 of the money was not paid until 1918. Until that payment was made there had been no overpayment, and necessarily could be no implied promise to refund money paid by mistake. It results, therefore, that the action, having been brought within five years of that time, is not barred by limitation.

Nor can we sustain the contention that the statute began to run as to each payment as of the date it was made, and that the recovery here must be limited to such part of the overpayment as the unbarred payment bears to the entire price. Appellee's right to recover accrued when an overpayment was made, and that did not occur until the $3,600.00 note was paid, which was within five years before he sued. Accordingly, his right of recovery extends to the full amount of the overpayment.

It is finally contended that the offer to rescind made by appellants in their amended answer constitutes a defense to the action, and that if a rescission cannot be decreed no recovery should be allowed. It is utterly impossible for the court to decree a rescission, because the Robert Church land has now passed out of the hands of appellee. Had he divested himself of the title with knowledge of the mistake, there would be much force in the contention of appellants, but when he discovered the mistake a considerable part of the land had been disposed of, and the conditions had so changed that it was not possible to effectuate a rescission of the contract. It is an established rule of equity that a rescission will not be decreed for mistake when the parties cannot be placed *in statu quo*. Keltner v. Keltner, 6 B. Monroe 40; Ruffner, &c. v. Ridley, &c., 81 Ky. 165; Rust, et al. v. Carptenter, 158 Ky. 672; R. C. L. vol. 6, pp. 936-9.

Appellee's claim cannot be defeated by an offer to rescind, which is impossible of acceptance because of the changed conditions and the impracticability of restoring the parties to the situations existing at the time of the trade. It follows that this defense, too, must be denied.

The judgment is affirmed.