**R. E. WALLACE et al., Appellants,**

v.

**Alvin CUMMINS et al., Appellees.**

Court of Appeals of Kentucky.

April 22, 1960.

Nathan Elliott, Jr., Harbison, Kessinger, Lisle & Bush, Lexington, Woodson T. Wood, Fox, Wood & Wood, Maysville, for appellants.

William O. Miller, Eugene C. Royse, Maysville, for appellees.

MOREMEN, Judge.

Appellants, R. E. Wallace and Katie May Wallace, husband and wife, of Fayette County, desired to purchase a farm in Bracken County. They requested Ed McGuire, a real estate dealer of that county, to help them locate suitable property.

McGuire visited appellee, Alvin Cummins, who owned a 152 acre farm close to Brooksville on state highway No. 10. Cummins was reluctant to sell, but later priced his farm at $35,000 which was more than appellants could finance.

The parties then began negotiations for the sale of part of the farm adjoining the highway and it was finally agreed that appellants would purchase that tract of land for $24,500. This portion abutted the highway for about 1000 feet and on it were good farm improvements consisting of a six room, two-story frame house, a tobacco barn, stable, double garage, and several smaller outbuildings.

A determination of the true facts of the negotiations has become the most important point in this case. Appellants state that they discussed with appellee the number of acres to be purchased, and the contract and deed that were later executed were on the basis of a purchase of land by acreage.

Appellee contends that the sale of the land was by tract and in gross and that when appellants were unable to purchase the entire farm they indicated that they wished to buy the front portion of it. The parties then went to the farm where they decided on a tract which fronted on the state highway, and then extended southwardly between the farm of Case on the east and Parina Road on the west to a field fence running east and west across the farm. At that time they put some markers on the fence and discussed some minor changes in it and the repair of it.

Thereafter, they entered into a sales contract, the pertinent part of which reads:

"Witnesseth: that the first party has this day sold to the second party 90 acres, more or less, line as agreed upon by both parties and being a portion of land conveyed to the party of the first part by a deed from Mrs. John Lundrigan * * *"

Later the appellees executed a deed of conveyance to the appellants, the descriptive part of which reads:

"Situate lying and being in Bracken County, Kentucky on the Brooksville and Germantown highway, and the Brooksville and Mt. Olivet Turnpike. Being about one and one half miles East of Brooksville, Ky. on highway No. 10.

"Bounded on the North by Kentucky Highway No. 10; on the East by the land of Willie Case; on the South by Alvin Cummins land; and on the West by the Brooksville and Mt. Olivet turnpike also known as the Parina Road. Containing 90 Acres of land, more or less."

Appellants took possession of the farm and an allotment of the tobacco base was made. Appellants were apparently content for about a year, and until they caused a survey to be made from which it was determined that the tract of land which they had purchased contained only 56.4 acres. Thereupon this suit was filed in which appellants prayed that appellees be required (1) to convey 33⁹⁄₁₀ acres of their adjoining land or (2) to repay the purchase price of land plus $500 in improvements placed thereon by appellants, in return for a reconveyance of land, or (3) to pay $8,400 with interest which sum would repay the deficiency in acreage at the rate of $250 per acre.

Issues were properly joined including a plea by appellees that the phrase, "90 acres of land" had been placed in the contract by mutual mistake of the parties.

The chancellor impaneled an advisory jury which in response to various interrogatories found that neither party knew the correct acreage of the tract, and that the expression "90 acres, more or less" was made only for the purpose of description and in such a manner as to indicate that the parties intended to risk the contingency of quantity whatever it might be, regardless of whether it exceeded or fell short of 90 acres. The court accepted the advice of the jury and concluded that the statement of acreage in the contract of sale and deed of conveyance was not binding on either party.

On this appeal, counsel are agreed that the fundamental law on this subject was well stated in the oft cited case of Harrison v. Talbot, 2 Dana 258, 32 Ky. 258.

In that case, the court, after a thorough discussion of cases previously decided in this state, said:

"As was truly observed in Young v. Craig [2 Bibb 270], the equity of each case must depend on its own peculiar circumstances. The relative extent of the surplus or deficit, can not, per se, furnish an infallible criterion. The conduct of the parties—the date of the contract—the value and extent and locality of the land—the price—and other nameless circumstances are always important and generally decisive.

"Sales in gross may be subdivided into various subordinate classifications; First—Sales strictly and essentially by the tract, without reference in the negotiation or in the consideration to any estimated or designated quantity of acres. Second—Sales of the like kind, in which though a supposed quantity by estimation is mentioned or referred to in the contract, the reference was made only for the purpose of description and under such circumstances or in such manner as to show that the parties intended to risk the contingency of quantity, whatever it might be, or how-much-soever it might exceed or fall short of that which was mentioned in the contract. Third—Sales in which it is evident from extraneous circumstances of locality, value, price, time and the conduct and conversations of the parties, that they did not contemplate or intend to risk

more than the usual rates of excess or deficit in similar cases, or than such as might be reasonably calculated on as within the range of ordinary contingency. Fourth—Sales which, though technically deemed and denominated sales in gross are, in fact by the acre and so understood by the parties.

"Contracts belonging to either of the two first mentioned classes, whether executed or executory, should not be modified by the chancellor when there has been no fraud."

Of the Harrison case (decided in 1834) in 1 A.L.R.2d at page 67, this was said:

"This doctrine has been quoted with approval in a great many later decisions from various jurisdictions and has been praised for its broad and comprehensive equity and its practical wisdom, although it has not altogether escaped criticism."

It is unnecessary for us to discuss the numerous cases of this court where reliance was on the opinion in the Harrison case, because a comprehensive analysis of them may be found in 1 A.L.R.2d at pages 67 to 73, inclusive.

We should remark, however, that in a number of opinions the Harrison case was cited as authority for decision when support is not to be found in it. Particularly, we point to some of those cases where the "10 per cent rule" has been applied. For instance, in the case of Wiedeman v. Brown, 1948, 307 Ky. 231, 210 S.W.2d 764, 765, we said:

"It is well settled in this state that a vendee of land may recover for a shortage in acreage regardless of whether the sale is in gross or by the acre, if the deficiency equals or is in excess of 10 per cent of the quantity purportedly sold. See Hunter v. Keightley et al., 184 Ky. 835, 213 S.W. 201, and Wigginton v. Holbrook, 193 Ky. 805, 237 S.W. 1063."

The opinion in Hunter v. Keightley had borrowed a quote from Rust v. Carpenter, 158 Ky. 672, 166 S.W. 180, which reads:

"This rule (the ten percenter) obtains, too, whether the relief asked on account of the deficiency be based upon a claim of fraud or mistake; so, if the deficiency be as much as or more than 10 per cent, relief against the same will be granted, if at the time the parties are ignorant of the deficiency or the vendee is deceived by the misrepresentations of the vendor as to the quantity. The above rule has been announced by this court in the following cases: Harrison v. Talbott [Talbot], 2 Dana 266, * * *." [184 Ky. 834, 213 S.W. 203.]

In Wigginton v. Holbrook, also cited in the Wiedeman case above, the Harrison opinion and subsequent opinions in which the Harrison case is relied upon, are cited as authority for the ten per cent rule.

A difficulty which appears when one reads these opinions arises from the fact that the rule was not promulgated in the Harrison opinion. Several cases from the Court of Appeals of Virginia were discussed and it was noted that the percentage of deficit was considered by the Virginia court and that in the opinion of that court "a deficit of thirty-three per cent should, per se, entitle to relief, on the ground of gross and palpable mistake * * *." And it was further noted that this court in Smith v. Smith, 4 Bibb 81, and Shelby v. Smith's Heirs, 2 A.K.Marsh. 504, 513, had refused to apply a percentage rule. The true rule of the Harrison case may be found in the language first above quoted in this opinion.

■ Nevertheless, regardless of its source, the so-called ten per cent rule is so well established in this state that its application is almost automatic. A few of the cases that have applied the rule, in addition to the cases above discussed, are: Jesse's Adm'r v. Hanna, 62 S.W. 1012, 23 Ky.Law

Rep. 430; Hall v. Ely, 76 S.W. 848, 25 Ky. Law Rep. 954; Collins v. Stodghill, 79 S.W. 185, 25 Ky.Law Rep. 2015; Landrum & Adams v. Wells, Ky., 122 S.W. 213; Boggs v. Bush, 137 Ky. 95, 122 S.W. 220, 222; Paisley v. Hatter, 143 Ky. 633, 137 S.W. 250; Page v. Hogan, 150 Ky. 726, 150 S.W. 801; Rust v. Carpenter, 158 Ky. 672, 166 S.W. 180; Wilson v. Morris, 192 Ky. 469, 233 S.W. 1049; Wigginton v. Holbrook, 193 Ky. 805, 237 S.W. 1063; Caudill v. Bernheim, 194 Ky. 368, 238 S.W. 1041; Keown v. Brandon, 206 Ky. 93, 266 S.W. 889; Piney Oil & Gas Co. v. Allen, 235 Ky. 767, 32 S.W.2d 325; Humphries v. Haydon, 297 Ky. 219, 179 S.W.2d 895.

We appreciate the irony of a situation where a rule is founded on an opinion which had in fact disapproved the theory of that rule, and we recognize the paradox presented when a rule which we say is to be applied automatically when a deficit of ten per cent exists, is subjected to exceptions. But if it is true that "exceptions prove the rule, otherwise a rule would be unnecessary," then we have followed the established practice because at least one exception exists, and the instant case falls within it.

In Chilton v. Head, 193 Ky. 768, 237 S.W. 422, 423, the opinion recognized that the second classification contained in the Harrison case was still an exception to the ten per cent rule, saying:

"The second, in which, though a supposed quantity by estimation is mentioned or referred to in the contract, the reference is only for the purpose of description and in such circumstances or in such manner as to show that the parties intended to risk the contingency of quantity whatever it might be or however much it might exceed or fall short of that which was mentioned in the contract."

This exception was applied and the court adjudged there was sufficient evidence that the parties had intended to risk the contingency of quantity.

Other cases which held the facts were such that they fell under the second classification of the Harrison case and therefore were above and outside the ten per cent rule are: Adkins v. Osborne, 275 Ky. 613, 122 S.W.2d 515; Morris v. McDonald, 196 Ky. 716, 245 S.W. 903; Sullivan v. Gouge, 311 Ky. 372, 223 S.W.2d 985, and Woods v. Mason, Ky., 279 S.W.2d 243, 244, wherein it was said:

"As is stated in the Harrison opinion, sales, under the first two mentioned classes, will not be modified when there has been no fraud—and no fraud was proven in this case."

There is no suggestion that fraudulent representations are involved in this case and there is ample proof to support the finding of the jury and the chancellor that this was a sale in gross where the parties intended to risk the contingency of quantity. Appellee testified the appellant himself laid out the line of division.

"90 acres more or less" seem to have been inserted in the instrument because the parties desired to have the tobacco base apportioned. The parties seem to have believed at the time that they could divide the tobacco base by agreement and this figure was reached because it would allow appellant a base of 2.05 acres out of a base of 3.51 acres which at that time belonged to the entire farm. Whether acreage may be so divided is not necessary for us to determine, but the explanation was accepted by the court and it was based upon competent evidence.

We feel convinced that this was a sale by tract and that the court properly so held.

Judgment affirmed.