**Deborah MANNING, et al., Appellants**

**v.**

**Robert Knox LEWIS, Appellee.**

**No. 2012–SC–000296–DG.**

Supreme Court of Kentucky.

June 20, 2013.

Gordon B. Long, Salyersville, Counsel for Appellants.

Ira Scott Kilburn, Salt Lick, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

Appellee, Robert Lewis, sought to void or reform a deed resulting from a sale of property through Appellant[1] Deborah

---

1. Deborah Manning, Terry Littleton, and Wilma Littleton are individual Appellants in this matter. Terry and Wilma Littleton were par-tial owners of the property along with Manning and her real estate company. For pur-

Manning's real estate company. Appellee filed suit claiming that the deed grossly misrepresented the amount of land he contracted to buy. The trial court ruled in favor of Appellants, finding that no fraud existed that would warrant reforming the deed, as Appellee was aware at the time of closing that the tract did not contain 300 acres of land. The Court of Appeals reversed and remanded for the trial court to decide whether to reform the deed and give Appellee a partial refund, or to void the deed altogether. Appellants now appeal to this Court, arguing that the Court of Appeals: 1) misapplied or misinterpreted the "10% Rule" and 2) went too far to protect Appellee from the unwise decision he made in purchasing the property. For the following reasons, we reverse and remand.

## I. BACKGROUND

On May 24, 2007, Appellee entered into a contract to buy real estate from Appellants. The Deed's description called for 300 acres, but also established that the property was being sold by tract, not acreage. On the same day, Appellee signed two documents. The first document was the "Broker's Disclosure to Potential Buyers" which stated in pertinent part:

> Furthermore, I am also disclosing that I am not warranting nor do not in any way guarantee the total amount of acreage included in this land. The property is being sold by the boundary description. The buyer is welcome to have the property surveyed at the buyer's expense.

The second document was the "Survey Waiver Form" which contained the following language:

> The Seller(s) Buyer(s) hereby waive(s) our/his/her right to a property survey against the advice of his/her real estate agent and broker and agree(s) to hold harmless the real estate agents or brokers involved in this transaction for the amount of acreage, boundary lines, or anything that could have been uncovered or clarified by a survey of the property.

The closing occurred on October 15, 2007 at the office of attorney Jeffrey Scott, whom Appellee had hired to do a title search on the property. Prior to the closing, Appellee was provided with a copy of the Magoffin County PVA assessment that showed the acreage on the property to be 128 acres.

On the day of the closing, Appellee spent approximately two hours with a surveyor, named either Joe Curd or Joe Spradlin,[2] who informed him that the property did not consist of 300 acres. Furthermore, Appellee testified that just prior to the closing he met with Merle Williams who indicated that he owned 40 acres of the property in question.

Appellee arrived late to the closing, as he had been consulting with his attorney, and initially announced that he would not close because he had just been informed that there was not 300 acres of property. Appellee then made an offer to have the property surveyed and pay $300 per acre. Appellants did not agree to this proposition, as the property was to be sold as a tract and not acreage. Appellants also informed him that he did not have to pur-

poses of this opinion, we will simply refer to them collectively as "Appellants."

**2.** It is unclear if the man who surveyed the property was named Joe Curd or Joe Spradlin. Appellee initially testified that it was Joe Curd, but on cross examination testified that it was Joe Spradlin. Then, he went on to insinuate that both men had done independent evaluations of the property, although he only testified about one surveyor.

chase the property, and was free to walk away from the deal. However, Appellee insisted on closing even after he admitted that he was aware the tract of land did not contain 300 acres.

After closing, Appellee had a survey done which showed that the tract contained 44.329 acres. Appellee filed suit alleging fraud and requested rescission of the sale, claiming that he was unaware of the deficiency in the acreage. However, the trial court concluded that there was no fraud in the inducement committed on the part of Appellants. Therefore, the trial court refused to reform the deed.

The Court of Appeals reversed the trial court, remanded the case, and ordered the trial court to decide whether to reform the deed and give Appellee a partial refund or to completely void the deed.

## II. ANALYSIS

### A. The 10% Rule Does Not Apply

■ Appellants first argue that the Court of Appeals misapplied or misinterpreted the law. Specifically, Appellants allege that the Court of Appeals erroneously applied the 10% Rule established in *Wallace v. Cummins*, 334 S.W.2d 904 (Ky. 1960). We review questions of law *de novo*. *Kentucky Pub. Serv. Comm'n v. Commonwealth ex rel. Conway*, 324 S.W.3d 373, 376 (Ky.2010) (citation omitted).

■ The Court of Appeals relied upon *Wallace*, as it is the leading case with regard to the applicability of the 10% Rule, an equitable doctrine that holds that where relief from a sale is sought because of a deficiency in acreage, and the deficiency is greater than ten percent of the stated acreage, relief will be granted if at the time of the conveyance the parties are ignorant of the deficiency or the buyer is deceived by misrepresentations of the seller as to the quantity of land. *Wallace*, 334 S.W.2d at 907; *see also Rust v. Carpenter*, 158 Ky. 672, 166 S.W. 180, 182 (1914).

In *Wallace*, this Court stated that the equity in each case must depend on its own particular circumstances surrounding the transaction. 334 S.W.2d at 906. *Wallace* relied on the four characterizations of transactions established in *Harrison v. Talbot*:

[a.] First—Sales strictly and essentially by the tract, without reference in the negotiation or in the consideration to any estimated or designated quantity of acres.

[b.] Second—Sales of the like kind, in which though a supposed quantity by estimation is mentioned or referred to in the contract, the reference was made only for the purpose of description and under such circumstances or in such manner as to show that the parties intended to risk the contingency of quantity, whatever it might be, or how-much-soever [sic] it might exceed or fall short of that which was mentioned in the contract.

[c] Third—Sales in which it is evident from extraneous circumstances of locality, value, price, time and the conduct and conversations of the parties, that they did not contemplate or intend to risk more than the usual rates of excess or deficit in similar cases, or than such as might be reasonably calculated on as within the range of ordinary contingency.

[d.] Fourth—Sales which, though technically deemed and denominated sales in gross, are, in fact, sales by the acre, and so understood by the parties.

32 Ky. 258, 266 (1834).

■ These categorizations are important because they determine the applicability of the 10% Rule. Land sale contracts

belonging to either of the first two classes, whether executed or executory, should not be modified when there has been no fraud. *Wallace*, 334 S.W.2d at 907. However, if a contract falls in one of the later two classifications then it may be reformed if the deficiency is based upon fraud or mistake, and the deficiency is as much or more than 10% of the agreed upon acreage. *Id.*

■ The Court of Appeals incorrectly classified the present transaction as falling within the third category, when at worst it falls within the second category where an estimated quantity is mentioned for the sole purpose of description, and therefore the parties fully intended to risk the quantity of land. Therefore, in the present case no reformation to the contract shall be made absent fraud or mistake. *Id.*

Furthermore, even if the Court of Appeals had correctly classified the transaction, it failed to take into consideration the "conduct and conversations" of the parties when rendering its decision. It is obvious from the actions of the parties that they did take into account the risk that the property would be deficient in acreage. First of all, Appellants drafted and Appellee signed the above-referenced disclosure and survey waiver forms. Both of these documents establish that Appellants did not make any claims of acreage, as the property was being sold as a tract, and that Appellee would hold Appellants harmless for any discrepancies discovered by a survey of the property. Appellee signed both of these documents, and, thus he assumed the risk associated with purchasing the property.

It cannot be disputed that Appellee was fully aware that he was not purchasing 300 acres of property. He had in his possession the Magoffin County PVA assessment, he had the report of his own personal surveyor, and he had knowledge that a third party owned at least 40 acres. Fur-

thermore, Appellee came to the closing and stated that he was not going to purchase the property, as his surveyor's report indicated that it did not contain 300 acres. Last, but certainly not least, Appellee insisted on closing even after Appellants told him that he was free to step away from the deal.

Not only did Appellee forfeit his rights to equity by closing on the contract, but there is also no indication of fraud or inducement on the part of Appellants. Several witnesses testified, even Appellee's attorney's paralegal, that, on the day of closing, Appellants never once made any type of claim as to the acreage of the property—only that it was sold as a tract. Furthermore, the same witnesses also testified that Appellants told Appellee that he would be held harmless if he chose not to go through with the closing.

■ Therefore, given the "conduct and conversations" of the involved parties, this Court finds that it would be inequitable to grant Appellee relief in the present situation. The 10% Rule was established to protect purchasers from entering into a contract which unbeknownst to them was inequitable; it was not established to protect those who simply make unwise decisions.

**B. The Court Will Not Protect Unwise Decisions**

■ Appellants next argue that the Court of Appeals went too far to protect Appellee from his unwise decision. Specifically, Appellants allege that the common law doctrine of caveat emptor (buyer beware) should apply to this case, and thus Appellee is not entitled to relief. Again, we review questions of law *de novo*. *Kentucky Pub. Serv. Comm'n*, 324 at 376.

■ "The maxim 'caveat emptor' ('let the buyer beware') expresses a rule of the

common law applicable to sales of property which implies that the buyer must not trust blindly that he will get value for his money, but must take care to examine and ascertain the kind and quality of the article he is purchasing, or, if he is unable to examine it fully or intelligently, or lacks the knowledge to judge accurately of its quality or value, to protect himself against possible loss by requiring an express warranty from the seller." *McClurkin v. De-Gaigney,* 251 S.W. 617, 619 (Ky.1923).

As was previously established, Appellee was aware that there was a deficiency in acreage. There is no question that Appellee was on notice regarding the deficiency in the property. The law simply cannot and should not protect people who choose to purchase property under these circumstances by allowing them to prevail.

### III. CONCLUSION

For the aforementioned reasons, we reverse the Court of Appeals and reinstate the judgment of the trial court in favor of Appellants.

All sitting. All concur.